(No. 51403.-

KREIDER TRUCK SERVICE, INC., Appellee, v. HENRY AUGUSTINE *et al.,* Appellants.

*Opinion filed September 19, 1979.*

Wiseman, Shaikewitz, McGivern & Wahl, of Alton, Dennis McGrady, of Gillespie, Charles Wesley, of Waynesville, and Robert Droste, of Mt. Olive, for appellants.

Hoagland, Maucker, Bernard & Almeter, of Alton (Robert B. Maucker and Al J. Pranaitis, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves the question of the liability of a certificated interstate motor carrier who had leased trucks from an owner for use in interstate hauling. The accident,

out of which the claims arose, occurred while the trucks were being used by the owner-lessor for its own use in purely intrastate hauling.

The plaintiff in this action, Kreider Truck Service, Inc., the lessee, filed suit in the circuit court of Madison County seeking a declaratory judgment as to its liability for injuries arising out of the accident. The trial court held that liability did not attach to Kreider despite the fact that the trucks involved had been leased to Kreider and had Kreider's name and Interstate Commerce Commission numbers displayed on them. On appeal, the appellate court, with one justice dissenting, affirmed and ruled that the vicarious liability doctrine of *Schedler v. Rowley Interstate Transport Co.* (1977), 68 Ill. 2d 7, did not apply to trucks operating at the time of an accident solely in intrastate rather than interstate commerce. The court further ruled that Kreider had no common law liability because neither it nor its agents had been operating the vehicles at the time of the accident. (64 Ill. App. 3d 576.) We granted a petition for leave to appeal.

On September 11, 1973, a tractor-trailer unit owned by Mary Pfister, who was operating her deceased husband's trucking business, collided with a shift-workers' bus. The collision occurred because a very dense early morning fog had severely reduced highway visibility. Immediately after this collision the driver of a second truck in a three-truck convoy of Pfister-owned trucks parked his vehicle nearby to aid the accident victims and to set warning flares. Before the flares could be set, however, as the third Pfister-owned truck reached the accident scene, it crashed into a truck approaching from the other direction.

Some months prior to the accidents, Mary Pfister had renewed leases on these three Pfister-owned trucks that her husband had earlier entered into with Kreider Truck Service, Inc. The leases were for one year and were renewable. Thus, at the time of the crash, the three trucks

were leased to Kreider, whose name and Interstate Commerce Commission (ICC) numbers appeared on all three trucks. By the terms of the leases, Pfister paid her own employees to drive the trucks, provided all maintenance, and covered all operating expenses. The record indicates that Pfister operated the trucks for Kreider exclusively in interstate commerce pursuant to Kreider's ICC permit.

Under an oral agreement, Pfister reserved the right to use the trucks for her own purposes whenever Kreider had no need for the trucks. When she used the trucks for these purposes, she used them exclusively in intrastate commerce pursuant to her own Illinois Commerce Commission certificate. She did not have an ICC permit. When the Pfister trucks were used in interstate hauling, they operated under Kreider's ICC permit. These trucks had not been used to haul anything for Kreider for several days; however, Kreider's name and ICC permit numbers, which had been painted on the doors of the trucks, had not been removed or covered. At the time of the accident the trucks were going to a quarry in Illinois to load limestone which was to be hauled solely intrastate, and the hauling would be done for Pfister and not for Kreider.

Under part II of the Interstate Commerce Act (49 U.S.C. sec. 301 *et seq.*) the Interstate Commerce Commission is authorized to prescribe regulations governing the use, by certificated carriers, of vehicles owned by others. (49 U.S.C. sec. 304(e).) Pursuant to this authority the Commission promulgated regulations relating to "Lease and Interchange of Vehicles." (49 C.F.R. pt. 1057 (1978).) Relevant to our case is section 1057.4, entitled "Augmenting equipment," which authorizes carriers to perform transportation with equipment they do not own. However, this section requires that the contract or lease of the equipment must be in writing and must specify its duration, which shall be for not less than 30 days with

certain exceptions. A copy of the lease or contract must be carried in the vehicle. Section 1057.4(a)(4) states that, except for circumstances not relevant here, the lease "[s]hall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement." Section 1057.4(b) provides:

> "When possession of the equipment is taken by authorized carrier *** said carrier *** shall give to the owner of the equipment *** a receipt specifically identifying the equipment and stating the date and the time of day possession thereof is taken; and when the possession by the authorized carrier ends; it or its employee or agent shall obtain from the owner of the equipment *** a receipt specifically identifying the equipment and stating therein the date and the time of day possession thereof is taken." (49 C.F.R. sec. 1057.4(b) (1978).)

Section 1057.4(d)(1) provides:

> "The authorized carrier operating equipment under this part shall remove any legend, showing it as the operating carrier, displayed on such equipment, and shall remove any removable device showing it as the operating carrier, before relinquishing possession of the equipment." 49 C.F.R. sec. 1057.4(d)(1) (1978).

Though the written lease between Pfister and Kreider did not explicitly mention either the "receipt" (sign-off) or "identification" regulations, the parties had orally agreed that Pfister's employees were to conceal Kreider's name and ICC numbers whenever the trucks were not operating on Kreider's business. Pfister provided removable panels for this purpose. At the hearing on this case, both Kreider and Pfister indicated that Pfister's employees generally complied with the concealment requirement. No specific sign-off procedure had been established. On the day of the accident, although the three trucks were operating solely on Pfister's intrastate business, Kreider's

name and number had not been concealed. Pfister's drivers later testified that they had been rushed on the morning of the accident and had merely forgotten to attach the panels. Also, no sign-off had occurred which would have indicated that Kreider had surrendered possession to Pfister. Both of Pfister's surviving drivers made statements at the accident scene indicating that Kreider and not Pfister owned and operated the trucks.

It is Kreider's position that since the trucks were being operated solely intrastate and not interstate, the rules of the Interstate Commerce Commission do not apply. Kreider also argues that since the trucks at the time of the accident were not being driven on Kreider business but for Pfister, the drivers were thus not employees or agents of Kreider and liability could not be imposed upon it under *respondeat superior.*

Although the public franchise doctrine, as stated in section 428 of the Restatement (Second) of Torts (1965) applies to motor carriers, problems have arisen in applying the principles of agency to the interstate aspect of the trucking industry. The ownership of trucks by independent contractors who entered into term leases or trip leases with ICC certificated carriers, and the multiple use of these trucks in both interstate and intrastate commerce by both the owner and the lessee made it difficult to determine who had control or possession of a truck at any given time for the purpose of determining liability for injury and damages arising from accidents.

To remedy this uncertainty the ICC regulations referred to above were adopted. On the basis of these regulations courts have developed a form of vicarious liability, placing responsiblity upon an ICC certificated carrier who has leased a vehicle from an owner, and who has failed to comply with the provisions of the above-quoted regulations, which impose certain responsibilities upon the carrier at the termination of the lease. Thus, in

*Schedler* this court conclusively presumed that since the lessee's name and permit number had not been removed from the vehicle or concealed, as required by section 1057.4(d)(1), it was, at the time of the accident, being operated for the lessee.

The appellate court acknowledged that under the law, as stated in *Schedler,* if the equipment in our case were being operated in an activity related to interstate commerce at the time of the collision, the ICC regulations would have been applicable and the lessee, Kreider, would have been liable for the negligence of the independent contractor, Pfister. The appellate court held, however, that the ICC regulations were not applicable because the vehicles were being used exclusively in intrastate commerce and were not being operated in the furtherance, in any way, of Kreider's business. 64 Ill. App. 3d 576, 580.

Under the ICC regulations the contract or lease must be for a fixed period of time not less than 30 days, and the regulations require that the lease or contract shall provide for "the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement." 49 C.F.R. sec. 1057.4(a)(4) (1978).

Under *Schedler,* it is not necessary to decide the troublesome agency questions such as "employee or independent contractor," "scope of employment," "frolic or detour," and "borrowed employees" in determining liability. It is necessary only to consider the simple question of whether the lease had been terminated and possession surrendered in the manner provided in the regulations; that is, by the lessee taking a receipt from the owner (sec. 1057.4(b)) and by removing from the vehicle the lessee's identification showing it to be the operating carrier (sec. 1057.4(d)(1)). The problems confronted in determining whether an activity constitutes interstate or

intrastate commerce are just as perplexing as, and produce uncertainty similar to, those involved in the question of agency. We see no reason why the simple rule of *Schedler* should not be applied in the resolution of the uncertainty of the interstate-intrastate question. When the lessee takes possession under the lease and places its identification on the equipment as required by section 1057.4(d), the provisions of the ICC regulations place upon the lessee exclusive *possession* and complete *responsibility*, which remain until possession is surrendered and the identification legend of the lessee-carrier is removed. The lessee-carrier, by entering into the lease and placing its identification on the vehicle, has vested the owner-lessor with authority to transport commodities in that vehicle in interstate commerce. That authority continues during the duration of the lease, until possession is surrendered and the identification removed. Likewise, the responsibility of the lessee who vested the owner-lessor with this authority must remain until possession is surrendered in the manner provided in the regulations. (See *Cox v. Bond Transportation, Inc.* (1969), 53 N.J. 186, 249 A.2d 579.) To permit a shifting of responsibility from lessee to owner and back to lessee, depending upon in whose business the vehicle is being used, without the execution of the required receipts when possession changes and without removing the carrier's identification number could lead to an abuse of the privilege granted by the permit and undermine the effectiveness of the regulations in accomplishing the purpose for which they were adopted.

In discussing this loose arrangement between Kreider and Pfister, whereby the vehicles would be used in Kreider's business or in Pfister's depending upon the need, we express no opinion as to the validity of such an arrangement. That question is not before us. We point out, however, a 1976 question and answer ruling of the Commission:

"Question 21. [If carrier A leased the vehicle from an owner-operator for 30 days or more, may it 'sublease' back to that owner-operator to enable the latter to perform an exempt agricultural movement in the latter's name?]

Answer: Intermittent use of equipment under a long term lease by the lessor and lessee is permissible if the carrier engages in authorized transportation of household goods. See Section 1057.4(a)(4)(ii). In all other situations, the turning back of equipment by the lessee to the lessor, whether it is called a 'sublease' or merely an arrangement for use, is viewed as a termination of the lease by mutual consent. If termination comes before the expiration of the minimum 30-day period there results a violation of the 30-day minimum requirement." (Ruling No. 126, "Leasing and Interchange of Motor Vehicles," 2A Fed. Carr. Rep. (CCH) par. 25,.at 126 (1976), 41 Fed. Reg. 46,438 (1976).)

Because the ICC regulations concerning the giving of a receipt and concealing the carrier's name and permit number upon the surrender of possession were not complied with, we hold that the obligations of complete responsibility, placed upon Kreider by the regulations when he entered into the lease and took possession, continued and existed at the time of the accident in question in this case. We therefore reverse the judgments of the appellate and circuit courts.

*Judgments reversed.*