**Thomas E. RIDDLE, Plaintiff,**

v.

**TRANS–COLD EXPRESS, INC., a corporation, and Charlotte N. Walbright, Defendants.**

**Civ. No. 80–4415.**

United States District Court, S. D. Illinois.

Jan. 19, 1982.

Schniederjon, Weber, Harvey & Stephens, Effingham, Ill., C. E. Heiligenstein, Belleville, Ill., for plaintiff.

Dennis E. Rose, Donovan, Hatch & Constance, Belleville, Ill., for defendant Trans-Cold Express, Inc.

Michael J. Pitzer, St. Louis, Mo., Russell F. Watters, Belleville, Ill., for defendant Walbright.

ORDER

FOREMAN, Chief Judge.

Before the Court is defendant Trans-Cold Express, Inc.'s Motion for Summary Judg-

ment. Plaintiff brings this action to recover damages for injuries he sustained as a passenger in a tractor leased to defendant Trans-Cold Express, Inc. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332.[1] In the Court's opinion, no material fact is in dispute and defendant Trans-Cold Express, Inc. (hereinafter defendant Trans-Cold) is entitled to judgment as a matter of law.

I.

On March 5, 1980, R&F Trucking, by its owners plaintiff and Janis M. Ferrarese, entered into a leasing agreement with defendant Trans-Cold, a common motor carrier engaged in the hauling of freight. According to the lease, R&F Trucking agreed to sublease to defendant Trans-Cold a tractor which it had leased from Rentar Industries, Inc., a corporate affiliate of defendant Trans-Cold. The tractor was to be used for five years in defendant Trans-Cold's interstate hauling business.

As part of the consideration supporting the lease, R&F Trucking agreed to provide drivers to operate the tractor[2] and to indemnify defendant Trans-Cold against certain losses incident to the operation of the tractor for which it may become legally responsible.[3]

On June 14, 1980, the leased tractor was involved in an accident with an automobile being operated by defendant Walbright. At the time of the accident, the tractor was being driven by John F. Mincello in a southerly direction on United States Interstate Route 57, near Effingham, Illinois. Plaintiff, who was sharing the driving duties during their trip from New York to Texas, was riding as a passenger. As a result of the accident, plaintiff sustained personal injuries. The parties stipulate that the tractor was being operated under the authority of defendant Trans-Cold's Interstate Commerce Commission Certificate. At all material times, the tractor bore defendant Trans-Cold's identification markings and permit numbers.

In Count I of his amended complaint, plaintiff seeks to impose liability on defendant Trans-Cold on the basis of Mincello's allegedly negligent driving under the authority of defendant Trans-Cold's certificate. Although not expressly stated in the amended complaint, plaintiff's alternative theory is that Mincello was defendant Trans-Cold's employee according to traditional agency principles.

In his deposition, Mincello stated that he started working with plaintiff some time in April or May, 1980. He stated that he received his salary in cash from plaintiff on a trip basis. He was required by defendant Trans-Cold to take a written safety test and physical before he could drive defendant Trans-Cold's leased equipment.

---

1. Plaintiff's Amended Complaint alleges that he is a resident of Connecticut, defendant Trans-Cold Express, Inc. is a corporation in Texas, and defendant Walbright is a resident of Illinois.

2. Paragraph 2 of the lease agreement provides, in part:

> The Independent Contractor [R&F Trucking] agrees to furnish for the term of this Agreement such operators, drivers and helpers as may become reasonably necessary to operate the the Leased Equipment pursuant to the Company's [defendant Trans-Cold's] directions. Such operators, drivers and helpers shall fully meet all legal requirements and such reasonable additional requirements as the Company may prescribe. Such operators, drivers and helpers shall at all times be the employees of the Independent Contractor, and are not and shall not be deemed to be employees of the Company.

3. Paragraph 4 of the lease agreement provides, in part:

> The Independent Contractor agrees to assume full responsibility for, and shall hold harmless and indemnify the Company against, any and all damages, losses, claims, costs and expenses, including reasonable attorneys' fees, for which the Company might become liable by reason of resulting from or arising out of any of the following:
> (c) injury or damage to or by the public caused to or by the Leased Equipment while not being operated in the service of the Company.
> (d) injury or damage to the Independent Contractor, or any of its employees, including any operators, drivers or helpers, or to the Leased Equipment, whether any such injury or damage occurs while the Leased Equipment is being operated in the service of the Company or otherwise...

## II.

In its Motion for Summary Judgment, defendant Trans-Cold argues that it cannot be vicariously liable to plaintiff, the lessor of the tractor, simply on the basis of being the I.C.C. certificate holder. In support of its argument, defendant Trans-Cold cites *Kreider Truck Service, Inc. v. Augustine*, 76 Ill.2d 535, 31 Ill.Dec. 802, 394 N.E.2d 1179 (1979) for the proposition that an I.C.C. certificate holder who rents vehicles for interstate hauling is vicariously liable for the negligent operation of the vehicle. Defendant Trans-Cold argues that the vicarious liability of an I.C.C. certificate holder only applies when members of the general public are injured, not the lessor of the vehicle. Finally, defendant Trans-Cold argues that plaintiff's suit against it is barred by the lease agreement wherein plaintiff agreed to indemnify defendant Trans-Cold against "injury or damage to the Independent Contractor, or any of its employees..."

In response, plaintiff argues that defendant Trans-Cold's vicarious liability as the I.C.C. certificate holder extends to plaintiff, the lessor of the tractor. It is contended that the I.C.C. regulations which vest complete responsibility for the operation of leased equipment with the I.C.C. certificate holder are for the benefit of the lessor and the general public. Plaintiff points out that the applicable regulations do not expressly exclude the lessor from coverage. In the alternative, plaintiff argues that even if plaintiff is not a beneficiary of the I.C.C. regulations, defendant Trans-Cold is liable by virtue of its employer-employee relationship with Mincello.

A. *Defendant's Vicarious Liability as an I.C.C. Certificate Holder.*

By virtue of 49 U.S.C. § 11107, the Interstate Commerce Commission has authority to promulgate regulations concerning leased motor vehicles being operated in interstate commerce.[4] Pursuant to this authority, the Commission requires that certain provisions be in all lease agreements between an I.C.C. certificate holder and the lessor of equipment. One such requirement is found in 49 C.F.R. § 1057.12(d)(1), which states:

> The Lease shall provide that the authorized carrier lessee shall have exclusive possession, control and use of the equipment for the duration of the Lease. The Lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the Lease.

This language and earlier regulations to the same effect have been interpreted to impose vicarious liability on the certificate holder, regardless of agency relationships, for the negligent operation of vehicles leased and operated under its certificate. *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975); *Wellman v. Liberty Mutual Insurance Co.*, 496 F.2d 131 (8th Cir. 1974); *Mellon National Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473 (3rd Cir. 1961); *Cosmopolitan Mutual Insurance Co. v. White*, 336 F.Supp. 92 (D.Del.1972); *Kreider Truck Service, Inc. v. Augustine*, 76 Ill.2d 535, 394 N.E.2d 1179 (1979); *Schedler v. Rowley Interstate Transportation Co., Inc.*, 68 Ill.2d 7, 11 Ill. Dec. 541, 368 N.E.2d 1287 (1977). However, whether an injured lessor is a beneficiary of this statutorily created vicarious liability depends upon the purpose of the requirement that the I.C.C. certificate holder retain exclusive control and bear complete responsibility.

---

4. 49 U.S.C. § 11107 provides in relevant part: [T]he Interstate Commerce Commission may require a motor carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title that uses motor vehicles not owned by it to transport property under an arrangement with another party to—
(1) make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier; (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

In *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), the Supreme Court held that an indemnity agreement was enforceable as between the lessor and lessee of equipment used in interstate hauling. In reviewing the purpose underlying the I.C.C. regulation of leased equipment, the Supreme Court stated:

> It is apparent ... that sound transportation services and the elimination of the transfer of operating authority, with its attendant difficulties of enforcing safety requirements and fixing financial responsibility for damage and injuries to shippers and members of the public, were the significant aims and guideposts in the development of the comprehensive rules.

*Transamerican Freight Lines, Inc., supra*, 423 U.S. at 37, 96 S.Ct. at 233. The Supreme Court reasoned that the lessor's agreement to indemnify the lessee did not diminish the lessor's financial responsibility under I.C.C. regulations to the shippers and the general public, and thus, was enforceable. As a premise to its reasoning, the Supreme Court found that the lessee's financial responsibility under the I.C.C. regulations was to the shippers, the general public and the Commission. The Supreme Court cited with approval language of the Commission which provided:

> It now seems to be accepted that when an authorized carrier furnishes service in vehicles owned and operated by others, he must control the service to the same extent as if he owned the vehicles, but need control the vehicles only to the extent necessary to be responsible to the shipper, the public, and this Commission for the transportation.

*Transamerican Freight Lines, Inc., supra*, 423 U.S. at 39, 96 S.Ct. at 234, *quoting, Lease and Interchange of Vehicles by Motor Carriers*, 52 M.C.C. 675, 681 (1951).

Given this purpose of vesting an I.C.C. certificate holder with control over the leased equipment and responsibility for the lessor's negligence, it is necessary to decide whether plaintiff is a member of the general public. In *White v. Excalibur Insurance Co.*, 599 F.2d 50 (5th Cir.), *cert. denied*, 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979) the Court considered this issue and found that the survivor of a truck driver killed while riding as a passenger in a vehicle leased to an I.C.C. certificate holder could not recover from the certificate holder's insurer. The Court specifically found that the driver who was killed in the accident was not a member of the general public, thus his survivor had no remedy under the I.C.C. regulations.[5] *White, supra*, 599 F.2d at 55–56.

■ In the Court's opinion, plaintiff is not a member of the general public for purposes of maintaining an action under 49 C.F.R. § 1057.12(d)(1) against defendant Trans-Cold. Plaintiff, as co-owner of the lessor, had contractual relations with defendant Trans-Cold, unlike members of the traveling public who were not involved in the parties' economic enterprise. *See, Proctor v. Colonial Refrigerated Transportation, Inc.*, 494 F.2d 89 (4th Cir. 1974); *War Emergency Co-op Association v. Widenhouse*, 169 F.2d 403 (4th Cir. 1948). Certainly, if the lessor was considered a member of the general public for purposes of holding the certificate holder vicariously liable, the Supreme Court in *Transamerican Freight Lines, Inc.* would not have allowed the lessor to assume ultimate liability by virtue of an indemnity provision in the lease. The rationale underlying *Transamerican Freight Lines, Inc.* was that the lessor and lessee of equipment operated under an I.C.C. certificate are free to agree, by contract, as to rights affecting their relationship, so long as their duty to the general public is not diminished. This rationale necessarily pre-

---

**5.** The Court in *White* also found that since the driver was a "statutory employee" of the lessee, his survivor's remedy would be under the lessee's workman's compensation program. This Court declines to extend the "statutory employee" fiction this far. The lessor and his employees are not the lessee's "statutory employees" for all purposes, as the Court in *White* suggests. The "statutory employee" fiction exists only to implement the lessee's financial responsibility to shippers and the general public.

supposes that the lessor and the general public are distinct entities.

Although a lessor is not an intended beneficiary under 49 C.F.R. § 1057.12(d)(1), a certificate holder's liability under traditional agency principles is not necessarily precluded.

B. *Defendant Trans-Cold's Vicarious Liability Under Traditional Agency Principles.*

As the Court stated in *Kreider, supra,* 394 N.E.2d at 1181, when a leased vehicle is being operated under an I.C.C. certificate, "it is not necessary to decide the troublesome agency questions such as 'employee or independent contractor,' 'scope of employment,' 'frolic or detour,' and 'borrowed employees' in determining liability." However, this reasoning applies only when the 49 C.F.R. § 1057.12(d)(1) is the source of plaintiff's claim for relief, that is, when plaintiff is a shipper or a member of the general public. The certificate holder may nevertheless be liable to the lessor for the tortious conduct of the certificate holder's employees.

 However, the Court need not decide whether Mincello was defendant Trans-Cold's employee. Plaintiff, as co-owner of R&F Trucking, agreed to indemnify and hold harmless defendant Trans-Cold for "injury or damage to the Independent Contractor, or any of its employees . . ." Moreover, plaintiff agreed to furnish all drivers of leased equipment and that the "drivers and helpers shall at all times be the employees of the Independent Contractor, and are not and shall not be deemed to be employees of the Company." The Court must only decide whether these contract provisions are enforceable.

Plaintiff argues that the indemnity provision is against all public policy. The Court disagrees. As noted, the Supreme Court in *Transamerican Freight Lines, Inc.* held that a similar indemnity provision was enforceable. As part of its reasoning, the Supreme Court found that by placing the ultimate financial responsibility on the lessor, such a provision actually enhances public safety because the lessor has greater incentive to comply with safety regulations. *Transamerican Freight Lines, Inc., supra,* 423 U.S. at 41, 96 S.Ct. at 235.

This reasoning applies with equal force to plaintiff's assumption of control over the drivers and agreement to indemnify defendant Trans-Cold. Both provisions enhance the likelihood that plaintiff will provide safer services. The Court notes that in no way does the enforceability of these contract provisions diminish defendant Trans-Cold's financial responsibility to shippers and the general public.

Accordingly, defendant Trans-Cold's Motion for Summary Judgment is hereby GRANTED. The Clerk is hereby ORDERED to enter judgment in favor of defendant Trans-Cold.

IT IS SO ORDERED.