REDIEHS EXPRESS, INC., and Wayne
W. Jacob and John W. Snyder,
Defendants-Appellants,

v.

Patricia MAPLE and James Maple,
Plaintiffs-Appellees,

The Indiana Department of Highways,
Wayne W. Jacob, David W. Snyder, Ed-
ward W. Jessie, Lesco Truck Brokers,
Inc., L.A. Wroten Co., and S.C. Shan-
non Company, Non-Appealing Defend-
ants.

No. 1–985A219.

Court of Appeals of Indiana,
First District.

April 23, 1986.

Rehearing Denied May 30, 1986.

John T. Lorenz, Mark D. Gerth, Friedrich A.P. Siekert, Kightlinger, Young, Gray & Detrude, Indianapolis, for Rediehs Express, Inc., defendant-appellant.

R. Kent Witte, William H. Stone, Columbus, for plaintiffs-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellants, Rediehs Express, Inc. (Rediehs), Wayne Jacob (Jacob), and David W. Snyder (Snyder), have filed interlocutory appeals from adverse partial summary judgments fixing liability upon them for damages for personal injuries in a suit filed by Patricia Maple and James Maple (Maples) arising out of a motor vehicle collision.

We affirm.

## STATEMENT OF THE FACTS

On June 10, 1983, Rediehs, a freight company operating under Interstate Commerce Commission (ICC) permits, leased a tractor and trailer from Snyder, who had no ICC permits, for a period of 30 days, the minimum period required by ICC regulations. The lease contained a clause by which lessor (Snyder) agreed to indemnify lessee (Rediehs) for loss arising out of the negligent operation of the vehicle. Further terms of the lease stated that Jacobs, Snyder's regular driver, would be Rediehs' driver. Rediehs' identification decal bearing its name and ICC identification number was placed on Snyder's tractor pursuant to the terms of the lease and pursuant to ICC regulations. Following instructions contained in the lease, Jacob and Snyder hauled a cargo from Michigan to Ft. Lauderdale, Florida, which they delivered on June 13, 1983. Snyder was directed by Rediehs to go toward northern Florida to get into position to pick up a northbound cargo for Rediehs. On June 12 Snyder entered into some arrangement with Lesco Truck Brokers, Inc. (Lesco), L.A. Wroten Co. (Wroten) and S.C. Shannon Company (Shannon) to transport a load of watermelons to Wisconsin. A dispute exists in the evidence as to whether Rediehs or its agents knew and consented to this contract. Rediehs submitted affidavits that none of its employees with authority to consent had authorized Snyder or Jacob to transport the watermelons and that it had received no payment therefor.

On June 15, 1983, while Jacob was driving the watermelon laden tractor and trailer, still carrying Rediehs' decal, and still operating within the term of the lease which was carried in the tractor, he became involved in a motor vehicle accident on Interstate 65 near Scottsburg, Indiana. As a result of the accident six people were killed and others injured, including Patricia Maple, who was forced over the side of a bridge into the creek below. Jacob was charged with, and pleaded guilty to, six counts of reckless homicide and eleven counts of criminal recklessness, Count 10 of which concerned Patricia Maple. By such pleas and by his deposition, Jacob admitted to entering a construction zone at an excessive speed during a rain storm. He admitted that he was negligent, he admitted the collision, and he admitted that his negligence caused Patricia Maple's injuries.

Suit was filed against Rediehs, Snyder, Jacob, the Indiana Department of Highways, Edward W. Jessie (a motorist), Lesco, Wroten, and Shannon. The latter three defendants were dismissed from the case on summary judgments. Conversely, partial summary judgments determined the issue of liability against Rediehs, Jacob and Snyder who appeal those decisions. In this appeal they raise only the issue of the propriety of summary judgments.

## DISCUSSION AND DECISION

Issue I. *Liability of Jacob and Snyder.*

Jacob and Snyder contend that the trial court erred in entering summary judgment

against them on the issue of liability because a genuine issue of material fact exists. They argue that in spite of the pleas of guilty, admissions made attendant thereto, and the admissions made in Jacob's deposition, an issue of material fact remains because the pleas and admissions are conclusory. They also point to Jacob's deposition wherein he stated that if the construction zone had not been so narrow, and the barricades had not been tied down, he could have avoided the accident. Jacob and Snyder further argue that other issues exist as to whether the car in front of Jacob was improperly stopped. They also argue the issue of whether the weather was a causative factor.

Summary judgment is appropriate only when the evidentiary material before the court shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. On appeal we are bound by that standard. *Consolidated City of Indiana v. Cutshaw* (1983), Ind.App., 443 N.E.2d 853, *trans. denied.* A summary judgment proceeding is not an abbreviated trial. *Id.* Factual issues are material when they bear upon the ultimate resolution of the case. *Campbell v. Eli Lilly & Co.* (1980), Ind.App., 413 N.E.2d 1054, *trans. denied,* 421 N.E.2d 1099. The burden is upon the proponent of the motion for summary judgment to demonstrate the lack of an issue of material fact, and any doubt is to be resolved in favor of the party opposing the motion. *Bell v. Northside Fin. Corp.* (1983), Ind., 452 N.E.2d 951; *Rowe v. Small Business Admin.* (1983), Ind.App., 446 N.E.2d 991, *trans. denied.*

■ Summary judgment is inappropriate if conflicting inferences can be drawn from the evidence before the court. *Rowe, supra.* It has been held that ordinarily, summary judgment is not the appropriate vehicle to determine a negligence case. *Lambert v. Parrish* (1984), Ind.App., 467 N.E.2d 791; *Doe v. Barnett* (1969), 145 Ind.App. 542, 251 N.E.2d 688, *trans. denied.* Nevertheless, once the moving party has met his burden, the non-moving party

may not rest upon his pleadings, but he must go forward with evidence to demonstrate that a genuine issue of material fact exists. *Conard v. Waugh* (1985), Ind.App., 474 N.E.2d 130. We first note that the fact that the lessee is liable, as we hold in Issue II infra, does not absolve the lessor. *Simmons v. King* (5th Cir.1973), 478 F.2d 857.

■ It was established that Jacob was the driver and an employee of both Snyder and Rediehs. The proceedings in the guilty plea hearing to the various criminal charges were factual. There, Jacob admitted to traveling at unsafe speeds in excess of 50 miles per hour upon entering a construction zone, where a speed limit of 35 miles per hour had been posted, and was unable to control his vehicle. From the terrible carnage wrought, inference can be drawn that the speed was greatly in excess of 50 miles per hour. He admitted his negligence. He admitted the causation. Maples have carried their burden.

Jacob and Snyder's argument is merely that negligence of others were contributing factors. It does not require citation of authority to show that where joint tort-feasors each by their separate acts of negligence contribute to an injury, the negligence of one is not a defense to the negligence of another.

Jacob and Snyder also argue that the trial court erred in considering evidence of Jacob's plea of guilty. They direct us to IND.CODE 34-3-18-1, enacted in 1982, which permits evidence of a final judgment, after a trial or upon a plea of guilty in felony cases, to be used in civil cases as proof of facts contained therein, and such judgment is not excludable as hearsay whether the declarant is available or not. Since the criminal recklessness charges are not felonies, they argue, such pleas were not admissible.

■ Indiana has long permitted pleas of guilty in all criminal cases to be used in civil cases, if appropriate and relevant, as an admission of a party against interest. *Brattain v. Herron* (1974), 159 Ind.App. 663, 309 N.E.2d 150. Under Indiana au-

thority, proof of conviction after a trial is not admissible because it is based upon hearsay or based upon the opinion of another trier. A plea of guilty, however, is an admission or a declaration against interest. It is our opinion that this rule was not restricted by IND.CODE 34-3-18-1, but the statute merely enlarges upon it in felony cases. Any statement or admission against interest, wherever made, is admissible at trial. *See* 12 I.L.E. *Evidence* Sec. 131, 132 and 135 (1959); Karlson, *1982 Survey of Recent Developments in Indiana Law—Evidence,* 16 IND.L.REV. 191, 194. Authorities cited by Jacob and Snyder concerning prior testimony of non-party witnesses are not in point.

We hold that the court correctly entered summary judgment against Jacob and Snyder.

Issue II. *Liability of Rediehs.*

■ As noted in the Statement of Facts, some evidence may exist, though conflicting, that Jacob and Snyder may have been embarked upon an enterprise of their own at the time of the wreck, without Rediehs' knowledge and consent. However, during this enterprise they were still operating within the term of the lease which was carried in the tractor, and they were still carrying Rediehs' identification decal and ICC number. No receipt had been executed terminating the lease and evidencing re-delivery of the equipment to the lessor. The trial court held that by authority of certain ICC regulations and certain federal and state court cases, Rediehs would be liable for any negligence of Jacob whether he was acting within the scope of the lease or not. Rediehs argues that Maples can recover from it only if they prove that Jacob and Snyder were acting on Rediehs' behalf under the lease at the time of the wreck. Since there was some evidence that they were not so acting, summary judgment, it argues, was inappropriate.

Two divergent lines of authority exist concerning liability of carrier-lessees, like Rediehs, where the owner-driver lessor, while operating within the lease, is involved in a wreck while pursuing business of his own. One line of cases holds that the carrier-lessee can be held liable for the negligence of the lessor only if the lessor is operating by authority of the carrier's ICC certificate and is carrying out the carrier's undertaking. If the lessor is not engaged in the business of the carrier-lessee at the time of the collision, the carrier-lessee is not liable under the doctrine of respondeat superior. This line of cases is represented by: *Pace v. Southern Express Co.* (7th Cir.1969), 409 F.2d 331; *Gudgel v. Southern Shippers, Inc.* (7th Cir.1967), 387 F.2d 723; and *Wilcox v. Transamerican Freight Lines, Inc.* (6th Cir.1967), 371 F.2d 403, *cert. denied,* (1967), 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992.

The other line of cases holds that the ICC regulations fix the primary responsibility for damages upon the ICC permit holder and that attempt to limit its responsibility must be rejected. They hold that so long as the carrier-lessee permits a lessor to use its authority, it is responsible for injuries caused thereby even if the lessor is embarked on an undertaking of his own while using the authority. Those cases are represented by: *Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.* 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169, (1975); *Rodriguez v. Ager* (10th Cir. 1983), 705 F.2d 1229; *Carolina Casualty Ins. Co. v. Insurance Co. of N. Am.* (3rd Cir.1979), 595 F.2d 128; *Wellman v. Liberty Mut. Ins. Co.* (8th Cir.1974), 496 F.2d 131; *Proctor v. Colonial Refrigerated Transp., Inc.* (4th Cir.1974), 494 F.2d 89; *Simmons, supra; Mellon Nat'l. Bank & Trust Co. v. Sophie Lines, Inc.* (3rd Cir. 1961), 289 F.2d 473; *Riddle v. Trans-Cold Express, Inc.* (S.D.Ill.1982), 530 F.Supp. 186; *Mustang Transp. Co. v. Ryder Truck Lines, Inc.* (E.D.Pa.1981), 523 F.Supp. 1097, *aff'd.* (3rd Cir.1982), 688 F.2d 823, *cert. denied,* (1983), 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978; *Cosmopolitan Mut. Ins. Co. v. White* (D.Del.1972), 336 F.Supp. 92; *Hodges v. Johnson* (W.D.Va. 1943), 52 F.Supp. 488; *Kreider Truck Serv., Inc. v. Augustine* (1979), 76 Ill.2d 535, 31 Ill.Dec. 802, 394 N.E.2d 1179; *Cox*

*v. Bond Trans., Inc.* (1969), 53 N.J. 186, 249 A.2d 579, *cert. denied,* (1969), 395 U.S. 935, 89 S.Ct. 1999, 23 L.Ed.2d 450.

Indiana has not spoken on this subject though *Pace, supra,* is an Indiana diversity case.

The history of the regulations of motor carriers reveals that after the commencement of regulation in 1935, because of stringent and comprehensive rules regulating the conduct, operation, financial ability, and insurance coverage of the motor truck industry, a substantial number of carriers possessing ICC certificates began to use equipment owned and driven by truckers who had no such ICC operating authority. This use was accomplished by a variety of leases, trip leases, and by other arrangements under which owner-operator truckers carried on the operations of the carriers with operating authority. In contracting with such persons the carriers took care to constitute the lessors as independent contractors which enabled them to avoid the commission's safety, financial, and insurance regulations that had been prescribed for equipment and drivers in order to protect the public. Many of the owner-operators without authority were itinerant truckers known as "gypsies," fly-by-night truckers with poor, unsafe equipment who had little financial ability. They may or may not have had adequate insurance. The hard core of the problem was the trip lease and its attendant evils which permitted an indifferent carrier to evade its safety and financial responsibility. *Cox, supra.* The practice of leasing made it difficult in accident cases to fix responsibility, and certified carriers could thus escape the consequences of the regulations and responsibility for accidents by employing irresponsible persons as independent contractors who were not financially accountable and who had no insurance or were under-insured. *Rodriguez, supra.* Thousands of unregulated trucks were on the road. *Simmons, supra.*

These practices ultimately came under the scrutiny of the ICC. Thereafter, under 49 U.S.C. Sec. 11107 (1982), Congress au-thorized the ICC and the Secretary of Transportation to prescribe regulations with respect to the use by motor carriers of motor vehicles not owned by them, but used pursuant to lease, contract or otherwise. The ICC thereupon adopted regulations governing the leasing by carriers of owner-driver equipment for the use by the carriers with operating authority for the interstate transportation of goods. *See* 49 C.F.R. Sec. 1057 (1982). Authorized carriers may use equipment owned by non-franchised truckers only by a lease or contract in writing. 49 U.S.C. Sec. 11107(a)(1) (1982); 49 C.F.R. Sec. 1057.11(a) (1982). The lease must specify the duration thereof, 49 U.S.C. Sec. 11107(a)(1) (1982); 49 C.F.R. Sec. 1057.12(b) (1982), but the term thereof shall not be less than 30 days when the owner operates the equipment. 49 C.F.R. Sec. 1057.12(c) (1982). Exclusive possession, use and control is required to rest with the lessee-carrier who is obligated to assume complete responsibility for the operation of the equipment for the duration of the lease. 49 U.S.C. Sec. 11107(a)(4) (1982); 49 C.F.R. Sec. 1057.12(d) (1982). The regulations require the compensation paid by the lessee to be specified as well as the inception and termination dates of the lease. 49 U.S.C. Sec. 11107(a)(1) (1982); 49 C.F.R. Sec. 1057.12(b), (e) (1982). When possession of the equipment passes from the lessor, the lessee-carrier is directed to execute a receipt therefor stating the time of day and the date when possession begins, and upon relinquishment of possession by the carrier, the owner of the equipment is mandated to execute a similar receipt to the carrier likewise stating the hour and date of retaking of possession. 49 C.F.R. Sec. 1057.11(b) (1982). At taking possession, the lessee is to make an inspection of the equipment. 49 U.S.C. Sec. 11107(a)(3) (1982). A copy of the lease or evidence thereof is required to be carried in the equipment. 49 U.S.C. Sec. 11107(a)(2) (1982); 49 C.F.R. Sec. 1057.11(c), (d) (1982). A sign or decal painted thereon or placed thereon in a removable manner is required to be attached to the equipment identifying the lessee as the operating carrier, which

identification is required to be removed upon relinquishing the equipment to the lessor. 49 C.F.R. Sec. 1057.11(c)(1).

The objectives of the regulations were many. Sharing, transfer, or leasing out operating authority was prohibited. It provided for enforcement of safety responsibility, for financial responsibility, and for adequate insurance coverage. *Transamerica Freight Lines, Inc., supra; Cox, supra.* Responsibility for control over the leased equipment is delegated to the lessee. Since only the carrier has ICC authority, it is not permitted to delegate it, abrogate it, or evade the responsibilities imposed by it by means of a contractual device, for there are basic requirements that are inherent in the relationship of the carrier for hire with operating authority to the public. *Cox, supra.* Thus, responsibility to the public under the leasing device is fixed. *Rodriguez, supra.* The stringent regulations also eliminate the difficulty faced by an injured plaintiff in determining who controlled the vehicle; the purpose upon which the vehicle was embarked at the time of the accident; and the questions of agency, employee or independent contractor status, frolic and detour, and borrowed employee. *Kreider, supra.*

We now turn to the holdings in the above cases.

An ICC carrier's liability for the equipment and the drivers covered by a leasing arrangement is not governed by the traditional common law doctrines of master-servant and respondeat superior. *Rodriguez, supra; Simmons, supra; Cox, supra.* The independent contractor concept has been eliminated for lease arrangements under ICC regulations. *Rodriguez, supra; Proctor, supra.*

Liability of a carrier is fixed as a matter of policy upon the carrier owning operating authority in lease situations in order to enforce ICC regulations. *Rodriguez, supra; Simmons, supra; Mellon, supra; Kreider, supra; Cox, supra.* Cases hold that where the leased vehicle is involved in an accident during the term of the lease while carrying on the decal the name and the ICC number of the carrier with operating authority, and while carrying a copy of the lease in the equipment with no release having been executed for the termination of the lease, the carrier is liable as a matter of law even though the owner-driver lessor was involved in a project of his own without the knowledge and consent of the carrier-lessee. *Rodriguez, supra; Wellman, supra; Simmons, supra; Mellon, supra; Kreider, supra; Cox, supra.* As examples, in *Rodriguez,* the owner-lessor was hauling a cargo not connected with lessee after proceedings to terminate the lease commenced but had not concluded. In *Mellon,* the lessor was hauling lumber not connected with lessee. In *Cox,* the owner-lessor was driving a tractor to his home from lessee's terminal. In *Kreider,* the lessor truck was used only intermittently by lessee, and while not being so used, lessor's truck became involved in an accident while hauling a cargo not connected with lessee.

The rationale expressed in these cases is that the lessee, by entering into the lease arrangement and placing his identification upon the vehicle, has vested the owner-lessor with authority he does not otherwise possess to transport commodities in interstate commerce. That authority continues during the duration of the lease and until the identification is removed and possession is surrendered. Likewise the responsibility of the lessee who has vested the owner-lessor with this authority must remain until possession is surrendered in the manner provided by the ICC regulations. *Rodriguez, supra; Simmons, supra; Mellon, supra; Kreider, supra; Cox, supra.* Without the lease and the identification on the decals, the owner-lessor would have no semblance of an excuse to even be on the road for any purpose. *Mellon, supra.* Operating authority cannot be shared. *Transamerican Freight Lines, Inc., supra.* The court in *Rodriguez* concluded:

"In summary ICC Regulations approach is applicable. The purpose is a praiseworthy one. It seeks to eliminate fly-by-night contracting by requiring the lessee

of a vehicle who permits the equipment to be used on this basis to assure responsibility for the accidents of the driver of the vehicle which displays its insignia. To fail to uphold the ICC Regulations would result in injustice. Trucking equipment such as that here present has a capability for bringing about terrible injuries and damages to life. This is a typical illustration. Here all of the occupants except one child (who was seriously injured) were killed as a result of the truck being on the wrong side of the highway."

*Id.* at 1236.

From the cases there emerges a policy designed to enforce the ICC regulations. The motor truck industry is closely regulated. In order to obtain operating authority, a carrier must demonstrate adequate financial ability, insurance coverage, ability to serve the public, and compliance with stringent safety requirements both as to equipment and competence of drivers. When the carrier, by lease, permits an unregulated truck and driver to be on the road wearing its livery, it makes it possible for the owner of that unregulated equipment and the driver thereof to do what he otherwise could not do. The ICC regulation, therefore, makes the carrier responsible for the lessor's conduct, which includes financial ability, insurance coverage, safety of equipment, and competence of drivers. Competence of drivers includes obedience to instructions. If the lessor-owner driver strays from instructions during the term of the lease, which act is predictable from the number of lawsuits on the subject, that too is the responsibility of the carrier, for without the lease he would not be on the road in any capacity.

Absent such a policy, when innocent people are hurt or killed, there will be, as here, a round robin of finger pointing by carriers, lessors, owners and drivers, cargo owners, and insurers raising issues of independent contractor, frolic and detour, whose cargo was being carried, what instructions the driver had, agency and the like in their attempt to evade responsibility for the carnage wrecked upon innocent motorists. The plaintiff encounters much difficulty in fixing responsibility, for only the carrier and his lessor really know their arrangements. A plaintiff should not be required to bear this burden nor should he be required to settle for a financially irresponsible defendant fathered by the carrier.

In short, the policy enunciated in the ICC regulations and the cases make the carrier totally responsible to the injured plaintiff as a matter of law for the negligence of the lessor and its drivers of a leased vehicle. The carrier must, at his peril, exert care in his leasing arrangements and avoid leasing from "gypsies" or fly-by-night, irresponsible truckers. The regulations and cases make the carrier police its lessors as it is policed by the ICC.

Argument is made that these cases create an unfair burden upon the carrier who is held responsible for the frolic and detour of its lessor. We disagree. Characteristically, the leases contain an indemnity clause held valid in *Transamerican Freight Lines, Inc., supra,* which requires the lessor to indemnify the lessee for any sums the lessee must pay to third parties on account of damage occasioned by the lessor's negligence. Such a clause exists in the case at bar. Thus, while as a matter of policy the primary liability to the plaintiff is fixed upon the carrier, the carrier has a right of indemnity against the lessor. If the carrier has been derelict in employing an under-insured, financially irresponsible or incompetent lessor, it has only itself to blame.

We agree with the holdings in the cases represented by *Rodriguez, Simmons, Mellon, Cox* and *Kreider,* and disagree with the line of cases represented by *Pace, Gudgel* and *Wilcox.* We hold that the trial court properly granted summary judgment on the issue of liability against Rediehs.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.