JILL FULTON, Indiv. and as Adm'r of the Estate of Bradley Fulton, Deceased, Plaintiffs-Appellants, v. TERRA COTTA TRUCK SERVICE, INC., Defendant-Appellee (Aimee Crawford Kirkley *et al.*, Plaintiffs; Gordon Weidner, Defendant).

First District (2nd Division)   No. 1—93—2538

Opinion filed September 13, 1994.

Jerome Mirza & Associates, Ltd., of Chicago (Jerome Mirza, of counsel), for appellants.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Bruce W. Lyon, and C. Barry Montgomery, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This appeal from a circuit court order granting a motion for summary judgment, raises as issues whether (1) a trucking company is vicariously liable for a driver's negligence where that driver was hauling loads for himself at the time of the accident, but the company's name and State Commerce Commission number were painted on the driver's truck and had not been concealed; and (2) *res judicata* and collateral estoppel apply to impose judgment without trial against the trucking company.

On December 2, 1987, Gordon Weidner was driving his semi-tractor trailer and collided with an automobile driven by Mark Ingerman near Belvidere, Illinois. Mark Ingerman and two of his four passengers received minor injuries. Another passenger, Jill Fulton, age 22, suffered permanent paraplegic injuries, and her five-year-old son, Bradley Fulton, was killed in the collision.

Plaintiffs Jill Fulton, the estate of Bradley Fulton, Aimee Crawford Kirkley, Donielle Boleyn Potts, and Mark Ingerman brought a negligence action against defendants Weidner and Terra Cotta Truck Service, Inc. (Terra Cotta). The complaint alleged that the truck Weidner was operating had Terra Cotta's legend and Commerce Commission numbers painted on its doors, as well as a statement that it was leased to Terra Cotta. The complaint was later amended to charge that Weidner was operating his truck under the authority, license, and registration number issued by the Illinois Commerce Commission (Ill. CC) to Terra Cotta.

Terra Cotta successfully moved for summary judgment, the circuit court holding that it could not be held liable merely because its legend and Ill. CC number were painted on the truck.

The facts are largely undisputed. At the time of the accident, the following legend was painted on the doors of Weidner's truck: "Leased to Terra Cotta ICC 129987 Ill. CC 16687 MC CPR 1C1550." The numbers were assigned to Terra Cotta by the Interstate Commerce

Commission (ICC), the Ill. CC, and the Transportation Commission of Wisconsin, respectively. Weidner owned the semi-tractor trailer and operated his own trucking business. He also hauled loads for other trucking companies under lease agreements. Weidner, as lessor, executed a three-year Ill. CC form lease of his vehicle to Terra Cotta for a term beginning July 13, 1987, which was in effect at the time of the accident. The lease was not a trip lease.

Weidner had executed his first lease with Terra Cotta in the early 1980s. In 1982, Weidner had his newly purchased truck with Terra Cotta's numbers and legend painted on it. No one at Terra Cotta ever told him to cover that information when he was not driving for Terra Cotta. A Terra Cotta official, however, claimed it was company practice to tell all drivers to cover that information when driving for others. At the time of the collision, Weidner was also in a lease agreement with another company, Kasper Trucking (Kasper). When Weidner hauled loads for Kasper, however, he bolted a metal placard displaying Kasper's logo and identifying numbers over the Terra Cotta information. He also had his own customers for whom he hauled loads.

Weidner believed that he did not need placards when he was driving for himself. Sometimes he left the Kasper placards on when he hauled loads for his own customers. Otherwise, Terra Cotta's legend and numbers appeared as painted on the doors. In doing so, Weidner was unlawfully operating his truck for hire upon the public roadways of Illinois without the required license or certificate from the Ill. CC. Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 18c—4104 (now 625 ILCS 5/18c—4104 (West 1992)).

Weidner testified, without contradiction, that on the day of the occurrence he was not on Terra Cotta business, but was hauling loads for his own customers. That morning he delivered a load of aglime to a quarry in Rockford, Illinois. That afternoon, when he crashed into Mark Ingerman's car, he was delivering another load of lime to a second customer.

The circuit court granted summary judgment in favor of Terra Cotta in an order dated November 23, 1992. The court refused to issue a Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a) (amended)) finding, ruling that the case should continue to trial as to Weidner and any appeal could ensue after trial.

Trial proceeded and the jury returned substantial verdicts against Weidner. Jill Fulton and the estate of Bradley Fulton (the Fultons) appeal only from the order granting summary judgment in favor of Terra Cotta.

The Fultons contend that Terra Cotta is vicariously liable for

Weidner's negligence because it allowed Weidner to use its franchise information and authority, *i.e.*, its company legend and Ill. CC number, in the operation of his own trucking business. They rely upon *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 368 N.E.2d 1287 (*Schedler*), and *Kreider Truck Service, Inc. v. Augustine* (1979), 76 Ill. 2d 535, 394 N.E.2d 1179 (*Kreider*), in support. In both cases, the supreme court held a trucking company vicariously liable for a driver's negligence where that driver was operating the vehicle for his or her own use, but the trucking company's name and permit number had not been removed from the vehicle or concealed pursuant to ICC regulations. *Kreider*, 76 Ill. 2d 535, 394 N.E.2d 1179; *Schedler*, 68 Ill. 2d 7, 368 N.E.2d 1287.

Terra Cotta counters that the Fultons' reliance on *Schedler* and *Kreider* is misplaced, because those cases construed ICC regulations and leases, which are unlike the Ill. CC regulations and leases governing the instant case. Terra Cotta claims that this critical distinction between Ill. CC and ICC regulations was recognized by the Seventh Circuit Court of Appeals in *American Interinsurance Exchange v. Occidental Fire & Casualty Co.* (7th Cir. 1988), 847 F.2d 1300 (*American*). We disagree with the determination reached in *American* because we find that the decisions in *Schedler* and *Kreider* control.

■ In *Schedler*, a trucking company and a driver-owner had entered into a lease agreement on the form prescribed by the ICC. The ICC regulations which governed the lease agreement required that the lease shall provide for " 'the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said *** lease.' " (*Schedler*, 68 Ill. 2d at 11, quoting 49 C.F.R. § 1057.4(a)(4) (1976).) The regulations also had placed affirmative duties upon authorized carriers to: issue the driver-owner a receipt stating what day the carrier had assumed possession and when the possession would end; identify its leased equipment as that of the carrier-lessee; and to "remove any legend, showing it as the operating carrier, displayed on such equipment" and "remove any [placard] showing it as the operating carrier, before relinquishing possession of the equipment." (*Schedler*, 68 Ill. 2d at 11-12, quoting 49 C.F.R. §§ 1057.4(b), (d), (d)(1) (1976).) The court noted that these regulations were designed to help fix financial responsibility for injuries to members of the public, *inter alia*. (*Schedler*, 68 Ill. 2d at 12.) Consequently, the court concluded:

> "[I]t was the purpose of the regulatory scheme that the carrier-lessee be vicariously responsible to the public for the negligent operation of the leased vehicle *without regard to whether at the*

*time in question it was being used in the business of the lessee.* [Citation.] To hold otherwise would permit injecting into each case the issues of agency, scope of employment and purpose of the movement out of which the occurrence arose, thus defeating the declared purpose of the regulations to eliminate the problem of fixing responsibility for damages and injuries to members of the public. Absent proof of compliance with [the regulations mandating the removal of legends and placards], we hold that if the [driver-lessor] is liable to plaintiff, [the carrier-lessee] must be held vicariously liable." (Emphasis added.) *Schedler*, 68 Ill. 2d at 12-13.

The court confirmed its holding in *Kreider*. There, a carrier and a driver-owner had entered into a lease agreement for three trucks on the form provided by the ICC. The parties, nevertheless, orally agreed that the owner could operate the trucks for her own use on the side, which she did solely in Illinois under her Ill. CC certificate. During her own intrastate operations, an accident occurred. Because the carrier's legend and ICC number had been painted on the doors of the trucks and had not been removed or concealed, the carrier-lessee was held vicariously liable. The court referred to the same regulatory provisions discussed in *Schedler* and determined that exclusive possession and complete responsibility had not been surrendered by the carrier-lessee as required. *Kreider*, 76 Ill. 2d at 537-42.

■ The Ill. CC regulations involved here are substantively to the same effect in this case as the ICC regulations were in *Schedler* and *Kreider*, when two statutory provisions are considered. The first requires a holder of an Ill. CC motor carrier license to "exercise direct supervision and control over all operations conducted with vehicles *** utilized in conducting operations under its license." (Ill. Rev. Stat. 1991, ch. 95½, par. 18c—4307(2) (now 625 ILCS 5/18c—4307(2) (West 1992)).) The second provides in pertinent part:

"General requirement. *The lessee of equipment used under authority of a license issued by the Commission shall have exclusive possession and control of the equipment while it is so used.* Failure to exercise supervision and control of the equipment constitutes an illegal transfer of authority, making both the lessor and lessee subject to sanctions ***." (Emphasis added.) 92 Ill. Adm. Code § 1360.55(a) (1993) (section 1360.55(a)).[1]

Section 1360.55(a), just like the ICC regulation construed in *Schedler* and *Kreider*, places *exclusive possession and control upon the*

---

· [1]The only exception provided to this general requirement of exclusive possession and control is where the lessee subleases the equipment to another carrier, in which event the sublessee has the obligation to supervise and control the equipment. 92 Ill. Adm. Code § 1360.55(b) (1993).

*lessee.* So long as the leased equipment is being used under authority of an Ill. CC license, "[t]he lessee *** shall have exclusive possession and control of the equipment while it is so used." (92 Ill. Adm. Code § 1360.55(a) (1993).) Therefore, under section 1360.55(a), two conditions must be met before vicarious liability is established: there must be a current lessee-lessor relationship involving the equipment and the equipment must be operating under authority of the lessee's Ill. CC license.

In the instant case, Weidner indisputably was operating his truck on the public roadways of Illinois under authority of Terra Cotta's license, displaying its number on the doors. Terra Cotta and Weidner had a current lessee-lessor relationship for Weidner's truck. Consequently, the foregoing provisions placed exclusive possession and control of Weidner's truck upon Terra Cotta. Moreover, Terra Cotta, as the lessee, had an affirmative duty to supervise and control Weidner's truck. Terra Cotta failed to do so when it allowed Weidner to use its Ill. CC license and authority in his own business, coloring his independent operation with legality. Therefore, Terra Cotta is vicariously liable, and summary judgment entered to the contrary must be reversed.

■ Terra Cotta's contentions remain to be addressed. According to Terra Cotta, no cause of action may be established in this case because there never was an actual transfer of authority from Weidner to Terra Cotta. In sole support of this theory, it points to deposition testimony that Weidner never operated under the lease and had not even picked up his file-stamped copy of the lease, as required by regulation (92 Ill. Adm. Code § 1360.30(f)(2) (1993)).

The regulatory provision cited by Terra Cotta provides in relevant part:

> "Identification of equipment. Authorized carriers shall identify the leased equipment as being in their service as follows:
>
>> (1) During the period of the lease, the carrier shall identify the equipment by attaching a placard with the identification of the lessee ***;
>>
>> (2) During the entire period of the lease, a copy of the executed lease shall be carried in each motor vehicle covered thereby." (92 Ill. Adm. Code § 1360.30(f) (1993).)

"Authorized carrier" is defined as a "person holding a motor carrier of property license from the Commission." (92 Ill. Adm. Code § 1360.20 (1993).) Terra Cotta was the authorized carrier here. Consequently, as expressly stated in the regulation, it and not Weidner was responsible for compliance. Terra Cotta's assertion fails.

■ Second, Terra Cotta advances the argument accepted by the *American* court: that the regulations confer exclusive possession and control of the equipment upon the lessee only during such periods as the equipment actually is operated in the lessee's business (*American*, 847 F.2d at 1301 (quoting an earlier version of the Illinois Administrative Code)).

The relevant provision provides that the following shall be an implied term of every lease: "Exclusive possession and control. The lessee shall have exclusive possession and control of leased equipment *during all periods when the equipment is operated under the lease.*" (Emphasis added.) (92 Ill. Adm. Code § 1360.40(b)(1) (1993).) In our view, Weidner was operating his vehicle under the lease. He was driving on the public roadways of Illinois only by virtue of Terra Cotta's license, having its authority displayed on the truck doors. Terra Cotta and Weidner had a current lessee-lessor relationship. Under section 1360.55(a), these two facts combine to form a conclusive presumption that Weidner was operating under the lease.

As the *Schedler* court held, it was the purpose of the regulatory scheme that the carrier-lessee be vicariously responsible to the public for the negligent operation of the leased vehicle "without regard to whether at the time in question it was being used in the business of the lessee." (*Schedler*, 68 Ill. 2d at 12-13.) "To hold otherwise would permit injecting into each case the issues of agency, scope of employment and purpose of the movement out of which the occurrence arose, thus defeating the declared purpose of the regulations to eliminate the problem of fixing responsibility for damages and injuries to members of the public." (*Schedler*, 68 Ill. 2d at 13.) This same reasoning applies in the case *sub judice.*

We reject the *American* court's holding that the Ill. CC regulations confer exclusive possession and control upon the lessee only when that equipment actually is operated in the lessee's business, because it cannot be reconciled with section 1360.55(a) and *Schedler* and *Kreider*. Moreover, the fact that a lessor such as Weidner may be able to enter into several lease agreements at once (see *American*, 847 F.2d at 1301-02) does not in any way alter the effect of section 1360.55(a), as stated above.[2]

---

[2]The *American* court presumed that the Ill. CC regulations allow "trip leases" through the use of a "master agreement," which would cover all trips for a maximum of three years. (See *American*, 847 F.2d at 1301-02.) The regulations contain no mention whatsoever of a "master agreement."

■ Terra Cotta lastly urges that the ICC has amended its regulations to avoid the result reached in *Schedler* and *Kreider*, thereby making those decisions mere historical footnotes. This claim is overstated. The ICC amended its regulations to "resolve problems involving carrier liability for the tortious acts of equipment owners who wrongfully continue to display the carrier's identification devices on equipment *after a lease contract has terminated.*" (Emphasis added.) (1986 F. Reg. 47,345.) Accordingly, the amendments, which became effective November 21, 1986, eliminated the carrier's affirmative duties to issue receipts and remove its identification from the leased vehicles when the lease expires. (1986 F. Reg. 47,344-47.) Contrary to Terra Cotta's assertions, these amendments would not have changed the result reached in *Schedler* and *Kreider*. The amendments could perhaps affect only those cases where equipment owners wrongfully continue to display a carrier's placard after the relevant lease contract has expired.

For the reasons stated in this opinion, the summary judgment entered in favor of Terra Cotta is reversed and the cause remanded to the circuit court for further proceedings with respect to whether Terra Cotta should be granted a trial and, if so, on what issues, or whether Terra Cotta should be deemed collaterally estopped from raising any issues of liability or damages, none of which the circuit court has yet considered.

Reversed and remanded with directions.

SCARIANO and McCORMICK, JJ., concur.

---

For clarity, we note that the Ill. CC regulations distinguish between trip leases, which are for periods of less than 30 days, and permanent leases, which are for periods of 30 days or more. (92 Ill. Adm. Code §§ 1360.20, 1360.30(g)(1), (g)(2) (1993).) *Significantly, section 1360.55(a) applies both to trip leases and permanent leases.* (See 92 Ill. Adm. Code § 1360.10 *et seq.* (1993).) The fact that a lessor may enter into more than one lease at a time does not alter the lessee's exclusive possession and control as provided for in section 1360.55(a).

This is true even where both the lessor and lessee are authorized carriers and enter into a trip lease, as in that situation the lessee must "exercise[ ] exclusive supervision and control of the equipment while it is operated under [its] license," and "[a]ll other requirements of [Part 1360 must be] complied with." 92 Ill. Adm. Code § 1360.65 (1993).