Craig S. GRIEBLER, an individual, Plaintiff-Appellant,

v.

DOUGHBOY RECREATIONAL, INC., a Delaware corporation, Nordson Corporation, formerly Domain Industries, Inc., foreign corporations, Ray Bramschreiber, an individual, Carolyn Bramschreiber, an individual, Diane C. Longsine, an individual, United Security Insurance Company, a foreign corporation, and unknown insurance carriers, Defendants-Respondents. †

Court of Appeals

*No. 89-0255. Submitted on briefs July 24, 1989.—Decided October 10, 1989.*

(Also reported in 449 N.W.2d 61.)

† Petitions to review granted.

622

For plaintiff-appellant there were briefs by *Daniel D. Whetter* and *Boltz & Whetter,* Green Bay.

For Doughboy Recreational, Inc., and Nordson Corporation there was a brief by *Thomas J. Arenz* and *Charles H. Bohl* and *Frisch Dudek, Ltd.,* Milwaukee.

For Ray Bramschreiber, Carolyn Bramschreiber, Diane Longsine and United Security Insurance Company there was a brief by *John A. Kramer* and *Grzeca & Stanton, S.C.,* Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.  Craig Griebler, paralyzed in a diving accident, appeals the summary judgments dismissing his claims against the manufacturers of the swimming pool, the pool owners and the owners' insurance carrier. The circuit court concluded that a swimming pool of an unknown depth presents an open and obvious danger to a diver and absolved both the manufacturers and the owners of any potential liability. We hold that summary judgment was not appropriate because disputed issues of material fact remain concerning whether Griebler knew or should have known that serious injury could result.

The Bramschreibers owned an aboveground pool located in their backyard. The sides measured approximately four feet high, and the water level was approximately three and one-half to four feet deep. Griebler, age twenty-two and six-foot-two-inches tall, attended a party at the Bramschreiber home on August 5, 1984. He arrived around 3:30 p.m. and ate, drank several beers, and socialized for two hours. Members of the party used the pool during this period, although Griebler did not. At around 5:30 p.m., Griebler's girlfriend was thrown into the pool from an adjacent deck and then Griebler assisted in throwing a friend into the pool. Soon after, Griebler dove into the pool from the deck. He hit his head on the bottom of the pool and sustained injuries rendering him quadriplegic.

In his deposition, Griebler testified that he had almost no prior experience in swimming pools, although he had performed hundreds of shallow water dives without injury in natural settings. He testified that he did not determine the depth of the water before he dove and did not know whether the water was deeper than the ground surface outside the pool. However, he was aware that when diving into shallow water, it was necessary to control his trajectory to avoid striking bottom. Griebler

testified that he had no idea that he could be seriously injured by diving into the pool. He only knew that he could possibly hit the bottom. Other evidence is set forth in the discussion that follows.

Griebler filed suit against the owners alleging that they were negligent in the construction, maintenance, supervision, and lack of warnings concerning their pool.[1] He joined the manufacturers, alleging negligence and strict products liability. The owners and the manufacturers moved for summary judgment, and the circuit court granted the motions, holding that the danger was sufficiently open and obvious to preclude recovery.

[1–3]

Whether summary judgment should be granted is a question of law that we review ab initio. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). In reviewing summary judgment motions, appellate courts must apply the standards set forth in sec. 802.08, Stats., in the same manner as trial courts. *Heck & Paetow Claim Serv., Inc. v. Heck,* 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980). We also recognize that a grant of summary judgment is a drastic measure. Generally, "[t]he question of causation, whether clear or unclear, is for the jury." *See Wisconsin Acad. of Sciences, Arts & Letters v. First Wis. Nat'l Bank,* 142 Wis. 2d 750, 760, 419 N.W.2d 301, 306 (Ct. App. 1987). Thus, summary judgment is rarely appropriate in negligence cases. *Ceplina v. South Milw. School Bd.,* 73 Wis. 2d 338, 342-43, 243 N.W.2d 183, 185 (1976).

---

[1]While the sufficiency of the warnings on the pool are in dispute, the manufacturers and the owners maintain, and the circuit court held, that the danger was sufficiently open and obvious so as to preclude recovery without the necessity of warning in any case.

In Wisconsin, landowners owe a duty of ordinary care to all persons who come upon their property with their consent. *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 857, 236 N.W.2d 1, 11 (1975). This includes the duty to either correct or warn of dangers about which the owner knows or should know. The landowner's duty of ordinary care is not breached if the dangerous condition is open, unconcealed, and obvious. *See Treps v. City of Racine,* 73 Wis. 2d 611, 617-18, 243 N.W.2d 520, 523 (1976). A manufacturer has a duty to exercise ordinary care to warn of dangers that it knows, or should know, are associated with the proper use of the product. *DeSantis v. Parker Feeders, Inc.,* 547 F.2d 357, 363 (7th Cir. 1976). However, the open and obvious danger rule also relieves the manufacturer of the duty to give notice of dangers that are obvious or patent to the user. *Collins v. Ridge Tool Co.,* 520 F.2d 591, 594 (7th Cir. 1975).

The obvious danger rule is better understood and more accurately applied when phrased in terms of *"known or obvious"* rather than the redundant and misleading *"open and obvious"* language frequently found in the case law. Our supreme court approved Restatement (Second) of Torts, sec. 343A (1965), in *Treps,* 73 Wis. 2d at 617-18, 243 N.W.2d at 523. Section 343A provides: **"Known or obvious dangers (1) A possessor of land is not liable . . . by any activity or condition on the land whose danger is *known or obvious* to [the users], unless the possessor should anticipate the harm despite such knowledge or obviousness."** (Emphasis supplied.) Comment 1(*b*) of this section states:

> The word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus, the

condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the *probability* and *gravity* of the threatened harm must be appreciated. "Obvious" means that both the condition and the *risk* are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment. (Emphasis supplied.)

As the comment demonstrates, the test is properly applied by examining whether (subjectively) the plaintiff actually knew of both the condition and the gravity of the harm threatened *or* whether (objectively) a reasonable person would appreciate both the condition and the risk. We therefore apply this analysis to the evidence presented for and against summary judgment.

## KNOWN DANGER

(A) Did Griebler know of the dangerous condition? Whether Griebler knew the water in the pool was shallow is, as noted by the circuit court, a disputed fact.[2] The court held, however, and we concur, that Griebler's admission that he did not know the depth of the water was the controlling factor. In other words, water of an unknown depth is a known "condition."

(B) Did Griebler know of the gravity of the risk? Griebler testified that he was ignorant of the probable serious consequences when diving into water of unknown depth. The circuit court ruled that it was

[2]Griebler denied knowing the water's depth. There is evidence, however, that others were playing "keep away" in the pool for 45 minutes while Griebler watched, raising an inference that the depth of the water would have been apparent.

unnecessary that Griebler know the extent of the risks as long as he knew there was some hazard of striking bottom. We disagree. The subjective part of the test requires that Griebler have actual knowledge that serious injury is probable. Although a plaintiff need not know the precise nature of the threat, to appreciate its "gravity" means he must recognize it will likely result in serious consequences. Webster's Third New Int'l Dictionary 992 (1976) defines "grave" as "involving or resulting in serious consequences : likely to produce real harm or damage . . .." Whether his professed ignorance is credible is a matter for the fact finder at trial. We therefore proceed to examine the second alternative, the objective or "obvious" nature of the danger.

## OBVIOUS DANGER

■

(C)   Would a reasonable person in Griebler's circumstances have appreciated or known of the dangerous condition? Given Griebler's admission that he had no knowledge of the water's depth, we conclude that a reasonable person would appreciate the presence of a dangerous condition.

(D)   Would a reasonable person appreciate the gravity of the harm? It is the difficulty of answering this inquiry that produces the rule disfavoring summary judgment in negligence cases. Unless this court views the likelihood of serious injury as so well recognized that it is not subject to reasonable dispute, then a jury must decide this issue.

■

Griebler's engineering expert, in answers at a discovery deposition, stated that most people do not appreciate the consequences of diving into shallow water, but conceded there was no data to support his belief. We

need not rule on the defense challenges to the relevance or admissibility of this evidence because we do not rely upon it. Expert testimony is not required for proof of negligence in every situation, and whether it is required or even admissible must be answered on a case-by-case basis. *Netzel v. State Sand & Gravel Co.,* 51 Wis. 2d 1, 6, 186 N.W.2d 258, 261 (1971).

The defense maintains that Wisconsin has consistently held that a person who voluntarily dives into a body of water, without first determining the depth of the water, confronts an open and obvious danger for which no cause of action exists. We have examined numerous cases involving diving accidents, including those the defense cites,[3] and find each of them either legally or factually distinct and not controlling here.

The trial court relied heavily upon *Davenport v. Gillmore,* 146 Wis. 2d 498, 431 N.W.2d 701 (Ct. App. 1988). Davenport was paralyzed when he took a shallow running dive in a backyard pond at a time when he was mid-thigh deep in the water without first ascertaining the depth of the water in front of him. We conclude that *Davenport* is not controlling here as it does not discuss whether the plaintiff knew or should have known the gravity of the risk. We therefore presume the issue was not raised.

*By the Court.*—Judgment reversed and cause remanded for trial.

---

[3]*Scheeler v. Bahr,* 41 Wis. 2d 473, 164 N.W.2d 310 (1969), involved the limited duty of a licensor prior to the *Antoniewicz* decision.