Cindy L. FULLER, Plaintiff,

v.

LeRoy A. RIEDEL, Sr., and Britton Motor Service,
Defendants-Appellants,

NORTHLAND INSURANCE COMPANY, Farmers
Insurance Group of Companies and Amerisurer
Insurance Company, Defendant,

WAL-ZON TRANSFER, Defendant-Respondent.

Daniel TRAVIS, Plaintiff,

v.

NORTHLAND INSURANCE COMPANY, LeRoy A.
Riedel, American Family Mutual Insurance Company
and Cindy L. Fuller, Defendants,

TRUCK INSURANCE EXCHANGE and Britton
Motor Exchange, Defendants-Appellants,

NEW HAMPSHIRE INSURANCE COMPANY and
Wal-Zon Transfer, Defendants-Respondents.

Court of Appeals

*No. 90-1236. Submitted on briefs November 5, 1990.—Decided
November 27, 1990.*

(Also reported in 464 N.W.2d 97.)

323

324

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Timothy J. Casper* of *Coyne, Niess, Schultz & Becker, S.C.* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Stephen O. Murray* and *David J. Pliner* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   This appeal arises out of a personal injury lawsuit following a collision between the plaintiffs' automobile and a semi-trailer truck engaged in interstate commerce owned and driven by LeRoy A. Riedel, Sr. Riedel's truck was subject to a "permanent" lease to Britton Motor Service, a licensed common carrier. Truck Insurance Exchange (TIE), Britton's insurer, obtained the settlement and dismissal of the plaintiffs' claims and now appeals a summary judgment dismissing its cross-claim for contribution/indemnity against another licensed carrier, Wal-Zon Transfer and its insurer, New Hampshire Insurance Company. TIE asserts that the circuit court erred by ruling as a matter of law that Wal-Zon had not leased Riedel's truck for the trip in progress when the accident occurred. We conclude that the facts of record reasonably give rise to competing inferences whether Britton or Wal-Zon leased the truck and reverse the summary judgment as to both Wal-Zon and New Hampshire and remand for further proceedings.

LeRoy Riedel, an independent contractor, owned and operated a semi-trailer truck that was subject to a "permanent" lease to Britton Motor Service, an ICC licensed common carrier, and under which Riedel was authorized to transport property for hire for Britton pursuant to the rules of the ICC "TO & FROM ALL POINTS IN THE CONTINENTAL UNITED STATES." Britton's printed form lease also included a provision that it terminates at the destination stated, but stated no particular destination prior to the accident

in question. The lease directed Riedel to remove all Britton signs and identification numbers and return them to Britton upon termination of the lease. The lease also stated:

> Notwithstanding any provision herein which might be construed otherwise, [Britton] shall have the exclusive possession, control and use of the said equipment, and *shall assume full and complete responsibility to the public,* the shippers and to all state and federal regulatory bodies or authorities having jurisdiction, *during the entire period of the lease.*

In contrast to the sweeping language in the lease, a Britton executive testified: "It is my understanding that [Britton drivers] had been given instructions that at the destination of a load terminated their lease with Britton Motor and then they were free to go on to contract under somebody else." Riedel, however, testified that the terms and meaning of the written lease were never explained.

For a period of time preceding the accident, Riedel hauled loads for Britton from Chicago to the Twin Cities about twice a week, but returned to Chicago with Britton's loads only on some occasions. It is undisputed that when Riedel hauled a load pursuant to the lease with Britton, TIE provided the liability insurance. On those return trips where Riedel carried no load, Riedel was covered by his own "bobtail" trucker's liability policy. On still other occasions, however, when Riedel had no return haul for Britton, he would seek a load from another carrier and operate pursuant to a written "trip lease," *i.e.,* an arrangement to transport property for hire under the authority and insurance of the carrier that hired Riedel to haul that particular load. On those occasions, Riedel would substitute the other carrier's signs and placards on his truck for Britton's signs.

327

On the occasion involved here, after delivering a load for Britton to Minneapolis, Riedel attempted to arrange to return a load to Chicago. He telephoned Wallace Gunnink, allegedly the owner and president of Wal-Zon, for such purposes.[1]

Both Gunnink and Riedel agree that they discussed using a trip lease (binding Wal-Zon) during this phone conversation, although they disagree on the precise words that were spoken. Gunnink testified:

Q   What happened in the phone conversation?

A   We discussed whether or not—he was a mile away from the office yet and I says it's Friday night and I wanted to leave. And so I says to LeRoy, you need a lease or how are we going to do this? And he says, no, let's just do it with a broker.[2]

Q   By lease you mean a trip lease?

A   Yes.

Q   What is a trip lease?

A   Just a document that states that he was running under Wal-Zon's ICC authority rather than in this case his own, Britton's.

Riedel's deposition states:

Q   And in fact, it's my understanding that Mr. Gunnink told you that he would enter into a trip-lease

---

[1]The appeal record contains only portions of discovery depositions, including that of Gunnink. Those excerpts do not reveal Gunnink's position with Wal-Zon. The parties do not dispute, however, that Gunnink had the authority to either lease Riedel's truck or to act as broker to arrange for another carrier to do so.

[2]The ICC rules describe a broker as one who, for compensation, arranges for the transportation of property by an authorized motor carrier.

with you if you wanted him to but that he'd rather not?

A  That's correct.

Gunnink attempted to phone Britton, ostensibly to broker the load under Britton's authority, but was unable to reach anyone. Gunnink conceded that it was the "acknowledged procedure in the industry for brokering a load" to have a copy of the other carrier's authority on file as well as a copy of its certificate of insurance. Gunnink had no knowledge of Britton's authority or insurance. Gunnink left a delivery receipt designating Britton as delivering carrier and a check payable only to Riedel in a mailbox for Riedel to pick up when he arrived. Gunnink later issued another check payable to Riedel alone to pay the balance due for the haul. Riedel said he was unaware that the delivery receipt named Britton as carrier, but also expressed the opinion that he had not entered into a trip with Wal-Zon. Riedel displayed the Britton signs and identification placards when he picked up the load at Wal-Zon's place of business and continued to display the Britton signs up until the time of the accident.

The rules for summary judgment are set forth in sec. 802.08, Stats., and have been described in many cases such as *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Summary judgment is appropriate only when material facts are not in dispute and when the only inferences that may reasonably be drawn from those facts are not doubtful and lead to only one conclusion. *Radlein v. Industrial Fire & Cas. Ins. Co.,* 117 Wis. 2d 605, 609, 345 N.W.2d 874, 877 (1984); sec. 802.08(2), Stats.

We construe TIE's cross-claim as one for indemnification and not contribution. Contribution distributes a loss based upon comparative negligence of joint tortfeasors. *Pachowitz v. Milwaukee & Subur. Trans. Corp.*, 56 Wis. 2d 383, 386, 202 N.W.2d 268, 270 (1972). The principals to this dispute are not joint tortfeasors. Indemnity, on the other hand, shifts the entire loss from one person who has been compelled to pay to another who on the basis of equitable principles should bear the loss. *Kjellsen v. Stonecrest, Inc.*, 47 Wis. 2d 8, 12, 176 N.W.2d 321, 323–24 (1970). After the circuit court denied Britton's motion for summary judgment and its insurer paid the plaintiffs' claim, indemnity would be an appropriate remedy if Wal-Zon in fact leased Riedel's truck. We conclude that there are material facts and inferences in dispute that preclude summary judgment.[3]

---

[3]The parties have submitted only a partial record, selecting excerpts from depositions that do not always support the allegations of fact made in the briefs. Assertions of fact that are not part of the record will not be considered. *See Jenkins v. Sabourin*, 104 Wis. 2d 309, 313, 311 N.W.2d 600, 603 (1981). Further, this court need not sift the record for facts that support counsel's contentions. *Keplin v. Hardware Mut. Cas. Co.*, 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964). The rules of appellate procedure, sec. 809.19(1)(d), (e) and (3), Stats., also require that the parties' briefs make appropriate record references.

Britton says "the most telling fact indicating that this load was not one brokered by Wal-Zon is that Wal-Zon paid Riedel . . . the lower trip lease rate rather than the higher brokered-load rate." We do not find this "fact" in the record. Wal-Zon says it "was authorized by the ICC to operate as both a common carrier and a broker," but makes no reference to the record.

We reject Wal-Zon's efforts to invoke the agency concept of apparent authority to bar TIE's claim *as a matter of law.* The doctrine of apparent authority binds the putative principal (Britton) for the acts of the agent (Riedel) where the injured third party (Wal-Zon) is induced to reasonably rely on the existence of the agency either by the words or conduct of the principal or the words or conduct of the agent accomplished with the principal's knowledge. *See Hollingsworth v. American Finance Corp.*, 86 Wis. 2d 172, 181, 271 N.W.2d 872, 877 (1978). Wal-Zon maintains that Britton permitted Riedel to carry its signs and placards on his truck, suggestive of authority to haul the load in question. The record, however, does not disclose whether Britton knew that Riedel kept its signs on the truck. Riedel testified that on other occasions when he trip-leased, he replaced the Britton signs with the other carriers' signs. Further, even if Britton knew of the use of its signs, whether Wal-Zon's alleged reliance on the signs and placards formed a *reasonable* basis to assume Britton's authorization to make the haul is a factual issue that depends in turn on all of the evidence, some of which is in dispute or unclear. As in negligence cases, summary judgment is rarely appropriate when dealing with questions of "reasonable" conduct. *See Griebler v. Doughboy Recreational,* 152 Wis. 2d 622, 626, 449 N.W.2d 61, 64 (Ct. App. 1989).

Apart from the apparent agency issue, a fact finder could infer a lease with either Britton or Wal-Zon, based on the parties' words and conduct. Britton's lease is certainly broad enough to encompass the haul in question, and its drivers were allegedly not told the limits of their authority. On the other hand, Gunnink allegedly offered

a trip lease "but [would] rather not," and, having failed to reach Britton by phone, proceeded to ship the load with no further investigation or knowledge of Britton's lease provisions, authority or insurance and paid Riedel directly for the haul. If a fact finder accepted Riedel's version and part of Gunnink's, it could infer from those statements and Wal-Zon's conduct that Gunnink had opted for a trip lease, albeit not a written one.

■

Contracts may be formed by conduct as well as by words. *See Restatement (Second) of Contracts* sec. 19 comment a (1981):

> Words are not the only medium of expression. Conduct may often convey as clearly as words a promise or an assent to a proposed promise. Where no particular requirement of form is made by the law a condition of the validity or enforceability of a contract, there is no distinction in the effect of the promise whether it is expressed in writing, or orally, or in acts, or partly in one of these ways and partly in others. (Citations omitted.)

*See also id.* at sec. 22(2).

■

Insofar as the recollections of Gunnink and Riedel are concerned, even where a witness makes contradictory statements, it is within the fact finder's province to accept or rely on either version or to disregard in part or total the other. *Graves v. Travelers Ins. Co.,* 66 Wis. 2d 124, 136–37, 224 N.W.2d 398, 405 (1974).

■

Finally, Wal-Zon suggests another possibility: If Britton is not liable as a matter of law, then Riedel hauled the load independently. This is contrary to fed-

eral law, and the reasons are set forth in *Wilson v. Riley Whittle, Inc.,* 701 P.2d 575, 578–79 (Ariz. App. 1984):

> In the 1950s, it was common practice for trucking companies to attempt to immunize themselves from liability by using independent truck drivers or by denominating the regular drivers as independent contractors. To combat this practice and to ensure that the motoring public was adequately protected, Congress enacted 49 U.S.C. sec. 11107 (formerly 49 U.S.C. sec. 304(e)). The federal statute and the regulations promulgated thereunder protect the motoring public by requiring the trucking company to have control of and to be responsible for the operation of leased vehicles. The trucking company is required to enter into a trip lease with the truckdriver, to inspect the lease vehicle, and to provide insurance coverage on any lease vehicle. 49 U.S.C. sec. 11107; 49 C.F.R. sec. 1057.
>
> The purpose of the regulations is stated in *Transport Indemnity Company v. Carolina Casualty Insurance Company,* . . . 652 P.2d 134 [136] (1982):
>
> > "Congress intended to put the use and operation of leased equipment on a parity with the use of equipment owned by the authorized carrier and operated by its own employees, in effect making the driver of the leased unit a statutory employee of the lessee." . . .
>
> Federal law creates an irrebuttable presumption that the lessor is the employee of the motor carrier. Under the Federal statutes and regulations the liability of the trucking company is no greater than that which exists under the doctrine of respondeat superior.
>
> The cases are uniform in holding that the absence of a written trip lease is legally irrelevant. In *Cox v. Bond Transportation, Inc.,* 53 N.J. 186, 249 A.2d 579 [586–87] (1969) . . . the court stated:

333

"The regulations described above have the force and effect of law. A franchised interstate carrier cannot evade them by making an oral or written lease with an owner-operator of equipment for a trip, for a day or for an indefinite period, which attempts to exclude or to limit their application. When such a carrier engages an owner-operator of a tractor intending to have him transport goods for it on the public highways and interstate commerce . . . the regulations must be deemed included in their contract." (Citations omitted.)

In conclusion, we reverse the trial court's grant of summary judgment dismissing Wal-Zon and New Hampshire and remand for further proceedings.[4]

*By the Court.*—Judgment reversed and cause remanded.

[4]We summarily reject Britton's argument that the New Hampshire policy covers the haul even if done under Britton's authority.