Eugene Henry WILLIAMSON and Elaine A. Williamson,
Plaintiffs-Respondents,†

v.

STECO SALES, INC., a Pennsylvania Corporation, ABC
Insurance Company, Defendants,

PACCAR, INC., d/b/a Peterbilt Motors Co., a Delaware
Corporation Qualified to Do Business in Tennessee,
Defendants-Respondents,

XYZ INSURANCE COMPANY, Ronald L. Haka,
Defendants,

NATIONAL GENERAL INSURANCE COMPANY, Defendant-
Respondent,

FIREMAN'S FUND INSURANCE COMPANY, Defendant-
Appellant.

Court of Appeals

*No. 94–0459. Submitted on briefs November 8, 1994.—Decided
February 9, 1995.*

(Also reported in 530 N.W.2d 412.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Gerald M. O'Brien* of *Anderson, Shannon, O'Brien, Rice & Bertz* of Stevens Point.

For the plaintiffs-respondents the cause was submitted on the brief of *Thomas M. Pyper* of *Whyte Hirschboeck Dudek S.C.* of Madison.

For the defendant-respondent, Paccar, Inc., d/b/a Peterbilt Motors Co., the cause was submitted on the brief of *Thomas Terwilliger* and *Richard W. Zalewski* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Wausau.

For the defendant-respondent, National General Insurance Company, the cause was submitted on the brief of *Ward I. Richter* and *Mary L. McDaniel* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

Before Eich, C.J., Sundby and Vergeront, JJ.

VERGERONT, J. This appeal arises from a personal injury action in which Ronald Haka backed his tractor-trailer (truck) into Eugene Williamson. Fireman's Fund Insurance Company appeals from a summary judgment determining that the policy issued to Jerzak Trucking, Inc. provides coverage for the alleged negligence of Haka because the truck was leased from Haka to Jerzak Trucking at the time of the accident. Fireman's Fund contends that Jerzak Trucking has no liability because the written lease between Jerzak Trucking and Haka terminated prior to the accident.[1] The Williamsons, National General Insurance Company (Williamson's uninsured motorist insurer) and Paccar, Inc. (the manufacturer of Haka's semi-tractor) (collectively, respondents) contend that there was a lease in effect at the time of the accident or, in the alternative, that Jerzak Trucking is liable under Interstate Commerce Commission (ICC) regulations. We conclude that there are genuine issues of material fact which preclude summary judgment and, therefore, we reverse the judgment.

## BACKGROUND

The accident occurred on May 8, 1991, in a sludge pit near Port Edwards, Wisconsin. According to the complaint, Haka was operating his truck, which became stuck. Eugene Williamson was working in the sludge pit and attempted to assist Haka. Williamson was injured when Haka's truck backed into Williamson.

---

[1] Fireman's Fund does not dispute that if Jerzak Trucking is liable for Haka's negligence, the policy provides coverage for Williamson's injuries if Haka is found negligent.

611

The Williamsons' suit named Haka, certain manufacturers and their insurers, and Fireman's Fund as defendants. National General moved to intervene when the question arose whether Haka was an uninsured motorist within the meaning of the policy issued to Williamson by National General, and the trial court permitted intervention. Fireman's Fund asserted a cross-claim against National General for contribution and indemnification.

Fireman's Fund moved for summary judgment dismissing it, and for a declaration that there was no coverage under the policy issued to Jerzak Trucking for Haka's allegedly negligent conduct. National General moved for summary judgment declaring that there was coverage under Fireman's Fund's policy because the truck was leased to Jerzak Trucking at the time of the accident. The trial court concluded that Fireman's Fund's policy does provide coverage because, under ICC regulations, Jerzak Trucking had the responsibility to remove its identification from Haka's truck and, until it did so, the lease continued and its liability remained. The trial court entered an order denying Fireman's Fund's motion, granting National General's motion, and dismissing National General.[2] In reviewing the trial court's decision on a motion for summary judgment, we apply the same standard as the trial court and follow the methodology summarized in

---

[2] Fireman's Fund petitioned for leave to appeal the trial court's judgment under § 808.03(2), STATS., and for a stay of further proceedings. Fireman's Fund then filed a notice of appeal from the trial court's judgment under § 808.03(1). This court dismissed the petition and the request for a stay because we concluded the judgment dismissing National General was final and, therefore, Fireman's Fund had an appeal as of right under § 808.03(1).

*Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372-73, 514 N.W.2d 48, 49-50 (Ct. App. 1994).

## ICC REGULATIONS

Under the authority of 49 U.S.C. § 11107, the ICC regulates motor vehicles leased to motor carriers.[3] The ICC promulgated regulations imposing conditions on leasing arrangements in order to address certain problems that threatened the public interest and the economic interest of the trucking industry. These problems included ICC-authorized carriers using leased vehicles to avoid safety regulations, and confusion on the part of the public as to who was financially responsible for accidents caused by leased vehicles. *See, e.g., Am. Trucking Ass'ns v. United States*, 344 U.S. 298, 304-05 (1953); *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473, 477 (3d Cir. 1961).

Under the regulations, authorized carriers using equipment they do not own must have a written lease that meets certain requirements. 49 C.F.R. § 1057.11(a).[4] The authorized carrier must identify the equipment it is leasing by displaying on both sides its name and "MC" number in letters of specified size and visibility; this information may be displayed by removable device. 49 C.F.R. § 1057.11(c); 49 C.F.R. §§ 1058.2 and 1058.3. 49 C.F.R. § 1057.12 sets out the required lease provisions, including:

> (c) *Exclusive possession and responsibilities*—(1) The lease shall provide that the authorized

---

[3] The ICC authorizes motor carriers to operate in interstate commerce only if the motor carrier has been issued a permit. 49 U.S.C. § 10923.

[4] All references to the Code of Federal Regulations are to the 1991 regulations, unless otherwise indicated.

carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

. . . .

(e) *Items specified in lease.* The lease shall clearly specify which party is responsible for removing identification devices from the equipment upon the termination of the lease and when and how these devices, other than those painted directly on the equipment, will be returned to the carrier.

(f) *Payment period*— . . . In addition, the lease may provide that, upon termination of the lease agreement, as a condition precedent to payment, the lessor shall remove all identification devices of the authorized carrier and, except in the case of identification painted directly on equipment, return them to the carrier. If the identification device has been lost or stolen, a letter certifying its removal will satisfy this requirement. Until this requirement is complied with, the carrier may withhold final payment.

The carrier is also responsible for maintaining insurance coverage for the protection of the public, and the lease must so specify. 49 C.F.R. § 1057.12(j).

## DISCUSSION

We first examine the submissions of National General to determine whether it has made a *prima facie* case for summary judgment. *See Brownelli*, 182 Wis. 2d at 372, 514 N.W.2d at 49.

Haka's deposition testimony is that he owned the truck and that he leased the truck to Jerzak Trucking on a year-to-year basis. He operated under Jerzak

Trucking's ICC and LC[5] numbers. Photographs of Haka's truck show Jerzak Trucking's name on the side of the truck, along with LC number 41938, IC number 26686, and MC number 141989, and a June 1990 Annual Vehicle Inspection Label bearing Jerzak Trucking's name as the contact entity. According to Haka, Jerzak Trucking took care of the filings with the Department of Transportation.

Haka testified that under the lease he did not have to work exclusively for Jerzak Trucking, and that Mr. Jerzak told him that if he could find work on his own, he could do it. Haka always kept Mr. Jerzak informed of where he was and what he was doing. On the day of the accident, he drove his truck to the sludge pit to pick up sludge on a job for an individual named Richard Gagas, a job Haka had arranged on his own because it was the slow season. Mr. Jerzak knew he was working for Gagas on the day of the accident. Mr. Jerzak did not take any share of the income Haka received for the jobs Haka found on his own; if Mr. Jerzak found Haka the job, Mr. Jerzak received ten percent. Haka testified that he always parked his truck in Jerzak Trucking's

---

[5] The State of Wisconsin Department of Transportation also regulates motor carriers, requiring a certificate for operation of the vehicle and proof of insurance. Sections 194.23 and 194.41, STATS. Wisconsin assigns LC (local carrier) and IC (interstate carrier) authority numbers to certified carriers. The vehicle must display the name of the carrier and the Wisconsin authority number, but these requirements are satisfied if the vehicle is operating under the authority of the ICC and complies with ICC identification requirements. WIS. ADM. CODE §§ TRANS. 302.04 and 302.06. WIS. ADM. CODE § TRANS. 302.09(2) provides that "[a] motor vehicle no longer being operated under the terms of a lease shall have all markings identifying the vehicle as being operated under a lease arrangement removed prior to operation on Wisconsin highways."

lot overnight, and that Mr. Jerzak let him park it there without a storage fee during the slow months of January, February and March. Haka thought his lease agreement with Jerzak Trucking was written, but he could not remember.

We conclude that Haka's testimony is sufficient to establish a *prima facie* case that Haka had a lease with Jerzak Trucking at the time of the accident. Haka indicates uncertainty about whether the lease was oral or written. But a lease may be formed by conduct or words; it need not be written. *Fuller v. Riedel*, 159 Wis. 2d 323, 332, 464 N.W.2d 97, 101 (Ct. App. 1990). Although ICC regulations require the carrier to have a written lease, the failure to have one does not absolve the carrier of liability if an oral lease exists. *Zamalloa v. Hart*, 31 F.3d 911, 917-18 (9th Cir. 1994).

However, since Haka was not carrying out a job for Jerzak Trucking at the time of the accident, National General has made a *prima facie* case for summary judgment only if Jerzak Trucking is liable even though Haka was doing a job for someone else.

The majority of courts considering the issue have held that during the lease term, the ICC carrier is liable for the lessor's negligence, even if the lessor is not engaged in a job for the lessee at the time of the accident. *See, e.g., Rodriguez v. Ager*, 705 F.2d 1229 (10th Cir. 1983); *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473 (3d Cir. 1961). *See also Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv., Inc.*, 569 N.E.2d 1049, 1053 (Ohio 1991); *Wellman v. Liberty Mut. Ins. Co.*, 496 F.2d 131 (8th Cir. 1974). *But see Wilcox v. Transamerican Freight Lines, Inc.*, 371 F.2d 403 (6th Cir.), *cert. denied*, 387 U.S. 931 (1967) (applying traditional *respondeat superior* principles

under Ohio law, whereby the carrier is not liable if the lessor was not engaged in business for the carrier at the time of the accident).

The rationale of the majority rule is that responsibility should be placed on the carrier, who has entered into the lease and placed its identification on the vehicle, allowing the vehicle to operate under its authority. *Kreider Truck Serv., Inc. v. Augustine*, 394 N.E.2d 1179, 1182 (Ill. 1979). The carrier's liability is sometimes called "statutory employment" because it is imposed to effectuate the purposes of the ICC regulations, but it is nevertheless a liability imposed under state law. *Paul v. Bogle*, 484 N.W.2d 728, 732-33 (Mich. Ct. App. 1992). Fixing responsibility on the carrier during the lease forces the carrier to take seriously its responsibility to insure the safety standards of the leased vehicle which, under 49 C.F.R. § 1057.12(c)(1), is within its exclusive control, and prevents confusion over which entity the injured party should sue. *Wyckoff Trucking*, 569 N.E.2d at 1053. The carrier is responsible even if the lessor is performing an intrastate operation for a third party. *Kreider Truck Serv.*, 394 N.E.2d at 1181-82.

We are persuaded by the reasoning of the majority rule[6] and conclude that National General has made a

---

[6] In *Fuller v. Riedel*, 159 Wis. 2d 323, 464 N.W.2d 97 (Ct. App. 1990), we quoted extensively from *Wilson v. Riley Whittle, Inc.*, 701 P.2d 575 (Ariz. Ct. App. 1984), including the statement that "[f]ederal law creates an irrebuttable presumption that the lessor is the employee of the motor carrier." *Id.* at 333, 464 N.W.2d at 101 (quoting *Wilson*, 701 P.2d at 579). *Fuller* involved a dispute between two ICC-authorized carriers over liability for the negligence of an equipment owner and operator, with each carrier contending the other had a lease with the

*prima facie* showing that Jerzak Trucking is liable because of Haka's testimony that his vehicle was leased to Jerzak Trucking.

Fireman's Fund does not dispute that Jerzak Trucking would be liable for Haka's negligence if there were a lease in effect at the time of the accident. Fireman's Fund's position is that, based on its submissions, it is undisputed there was no lease in effect at that time, and it is therefore entitled to judgment as a matter of law. We now examine those submissions to determine whether there is a factual dispute on this issue.

Fireman's Fund submitted two affidavits of Rita Jerzak.[7] Ms. Jerzak states that she was vice-president of Jerzak Trucking, which is no longer in operation, and that as custodian of the records, is familiar with Jerzak Trucking's records. She states there was a written lease in effect between Jerzak Trucking and Haka from April 1, 1990 through February 1, 1991, and another written lease in effect from July 15, 1991 through January 31, 1992; but between February 1, 1991 and July 15, 1991, no lease was in effect. According to Ms. Jerzak, the LC and other authority Haka

---

owner-operator. We reversed the trial court's grant of summary judgment because we found a fact-finder could infer from the evidence a lease with either carrier. In spite of our extensive quotation from *Wilson*, we did not decide how the regulations affected the liability of either of the carriers.

[7] Fireman's Fund also submitted the affidavit of Gerald O'Brien, one of its attorneys, which states that, at O'Brien's direction, a paralegal contacted the Wisconsin Department of Transportation and was advised that the LC authority extended to Haka through Jerzak Trucking had expired January 31, 1991, and that the records did not show that any LC authority through Jerzak Trucking existed for the vehicle on May 8, 1991.

was operating under during the first lease expired on January 31, 1991, and a new one was not applied for until July 15, 1991, when the next lease began. Attached to her affidavit are the two written leases and two ICC forms entitled "Uniform Identification Cab Card," in which Jerzak Trucking permits Haka's vehicle to operate under Jerzak Trucking's ICC Operating Authority Number 141989. The date of execution of the first ICC form is April 1, 1990, and the expiration date is February 1, 1991; on the second form, the execution date is July 15, 1991, and the expiration date is February 1, 1992.

Ms. Jerzak's supplemental affidavit states that when the lease agreements were in effect, Haka kept his truck on the lot of Jerzak Trucking, but when the lease agreement between Haka and Jerzak Trucking expired on February 1, 1991, Haka's truck was removed from the lot and was not returned until July 15, 1991. She also states that during the two lease terms, Jerzak Trucking kept Haka occupied full-time and that she had no knowledge of other jobs arranged by Haka that were not lined up by Jerzak Trucking during the lease terms; but from February 1, 1991 to July 15, 1991, neither she nor any other agent of Jerzak Trucking knew of Haka's jobs or work arrangements.

Fireman's Fund concedes that Jerzak Trucking's name, ICC-MC number and LC number were on Haka's truck at the time of the accident.

Respondents argue, and the trial court agreed, that because of the ICC regulations, the lease did not terminate until Jerzak Trucking had removed its identification. Fireman's Fund responds by saying that all the cases relied on by respondents are distinguishable because in each case there was a written lease in effect;

liability was not based solely on the carrier's identification on the truck. This description of the cases is accurate, except for *Cosmopolitan Mut. Ins. Co. v. White*, 336 F. Supp. 92 (D. Del. 1972) and, possibly, *Rodriguez v. Ager*, 705 F.2d 1229 (10th Cir. 1983).

In *Cosmopolitan Mut. Ins. Co.*, the written lease provided that it would remain in effect until either party terminated it. *Cosmopolitan Mut. Ins. Co.*, 336 F. Supp. at 94. The carrier contended that the lease terminated two days before the accident because it had notified the lessor that termination was effective on that date, pursuant to the terms of the lease. The carrier also contended that, even if the lease was in effect on the date of the accident, the lessor was not engaged in any activity for the carrier on that date, although the carrier's placards were still on the vehicle. *Id.* at 96. The court concluded that obtaining a receipt for the return of the vehicle and removing the ICC placards were prerequisites to a termination of the lease, relying on then-existing 49 C.F.R. §§ 1057.4(b) and 1057.4(d)(1).[8]

---

[8] At the time *Cosmopolitan Mut. Ins. Co. v. White*, 336 F. Supp. 92 (D. Del. 1972), was decided, 49 C.F.R. § 1057.4 provided in relevant part:

(b) *Receipts for equipment to be specific.* . . . . [W]hen the possession by the authorized carrier ends; it or its employee or agent shall obtain from the owner of the equipment, or its regular employee or agent duly authorized to act for it, a receipt specifically identifying the equipment and stating therein the date and the time of day possession thereof is taken.

. . . .

(d)(1) *Identification to be removed when lease terminated.* The authorized carrier operating equipment under this part shall remove any legend, showing it as the operating carrier, displayed on such equipment, and shall remove any removable device showing it as the operating carrier, before relinquishing possession of the equipment.

In *Rodriguez*, the court relied on these same regulations in holding that the carrier remained liable, *Rodriguez*, 705 F.2d at 1231, although it does appear, as Fireman's Fund contends, that the written lease may still have been in effect because certain other formalities required by the lease for termination had not been completed by the date of the accident. *Id.* at 1230.

Although *Cosmopolitan Mut. Ins. Co.*, and perhaps *Rodriguez*, do provide support for the proposition that a written lease does not terminate if the carrier's identification remains on the truck, those cases, and the other cases cited by all parties, were based on a prior version of the regulations. Prior to November 21, 1986, 49 C.F.R. § 1057.11(b)(2) required that the carrier obtain a receipt from the lessor when the carrier gave up possession of the equipment upon termination of the lease. Effective November 21, 1986, 49 C.F.R. § 1057.11(b)(2) permits, but does not require, the lease to provide for a receipt upon termination. 49 C.F.R. § 1057.12(e) provides that the lease shall specify the manner in which a receipt will be given upon termination of the lease, if a receipt is required at all by the lease.

Also effective November 21, 1986, the requirement in 49 C.F.R. § 1057.11(c)(1) that the carrier remove its identification at the termination of the lease was replaced by the requirement, now in 49 C.F.R. § 1057.12(e), that the lease provide which party is responsible for removing the carrier's identification and how this is to be done.[9] The same amendment

These provisions were later renumbered 49 C.F.R. §§ 1057.11 (b)(2) and 1057.11(c)(1), respectively.

[9] Neither of the two written leases between Haka and Jerzak Trucking contained a provision concerning removal of Jerzak Trucking's identification upon termination of the lease.

permits the carrier to include a lease provision making removal by the lessor a condition precedent for payment. 49 C.F.R. § 1057.12(f). None of the parties discusses the impact on carrier liability of the amendment relating to the carrier identification,[10] and we are not aware of any case addressing this issue.[11] However, we are persuaded, based on the ICC decisions proposing and adopting the amendment, that we should not impose carrier liability based solely on the existence of Jerzak Trucking's identification on Haka's truck.

The amendment relating to carrier identification was prompted by the concern of carriers after the *Rodriguez* decision. The Interstate Carrier Conference petitioned the ICC to amend its regulations to make the equipment owner responsible for removing the carrier's identification upon the termination of a lease and to expressly state that the carrier is liable for the operation of the equipment only so long as the lease contract, by its own terms, remains in effect. *Lease and Interchange of Vehicles (Identification Devices)*, 3 I.C.C.2d 92 n.1 (1986). The ICC declined to require equipment owners to be responsible for removing the carrier's identification because they are not subject to the ICC's jurisdiction. *Id.* at 93. It also declined to adopt the second proposed regulation because "[t]o do so could be interpreted as an attempt to influence State law. Liability in these situations depends on a variety

---

[10] The trial court and the parties did recognize that a receipt is no longer required upon termination of a lease.

[11] The court in *Fulton v. Terra Cotta Truck Serv., Inc.*, 639 N.E.2d 1380, 1385 (Ill. App. Ct. 1994), refers to the amendment but did not find it significant because there was no question that the lease was still in effect.

622

of factual and legal determinations outside the scope of Commission jurisdiction." *Id.* at 93.

Instead, the ICC decided to make the removal and. return of carrier identification a matter of contract, which "will give the carriers flexibility to require immediate return of identification devices." *Id.* at 94. The ICC also decided to give carriers the option of conditioning final payment on return of the identification devices as a method of assisting carriers in obtaining the return of their identification devices. *Id.* at 95. The ICC stated that its regulations as amended "are designed to make clear that our leasing rules do not and are not intended either to assign liability based on the existence of placards or to interfere with otherwise applicable State law." *Id.* at 93.

In view of the ICC's express intent that its regulations not impose liability based solely on the carrier's identification on the vehicle, we decline to impose liability on that basis alone. The issue of a carrier's liability for injury caused by a leased vehicle is a matter of state law, as the ICC recognized. However, courts have looked to ICC regulations in defining the carrier's liability so as to further the important interests they protect. We interpret the ICC's decision as a statement that it does not consider liability based solely on the carrier's identification to be necessary for the achievement of its regulatory goals. We will defer to that judgment. We conclude that Jerzak Trucking's identification on Haka's truck on the date of the accident is not enough, in itself, to continue the written lease and impose liability on Jerzak Trucking. However, we also conclude that the existence of the carrier's identification on Haka's truck is evidence that there was a lease in effect on the date of the accident. This approach

recognizes the importance of the carrier's identification to the ICC regulatory scheme and purposes, but does not impose liability solely on that basis.

Having concluded that National General is not entitled to summary judgment based solely on the carrier identification on Haka's truck, we now consider whether Fireman's Fund's other submissions create a factual dispute that entitles Fireman's Fund to a trial. We conclude they do.

■

On a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-moving party, in this context, Fireman's Fund. *See Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980). The two written leases, one providing for termination on February 1, 1991, and the second beginning on July 15, 1991, as well as the two Uniform Identification Cab Cards, create a reasonable inference that there was no lease in effect during that interim period. This inference creates a factual dispute on the existence of a lease at the time of the accident.

Fireman's Fund argues that it is entitled to summary judgment because the written leases and Ms. Jerzak's affidavits establish, as a matter of law, that there was no written or oral lease in effect at the time of the accident. However, we have already held that the existence of Jerzak Trucking's identification on Haka's truck is evidence that there was a lease in effect at the time of the accident. That, together with Haka's testimony on his lease with Jerzak Trucking, is sufficient to preclude summary judgment in Fireman's Fund's favor.[12]

---

[12] Because of our conclusion that the two written leases and the Uniform Identification Cab Cards, on the one hand, and the truck identification and Haka's testimony, on the other hand,

Because there are material factual disputes concerning the existence of a lease on the date of the accident, neither party is entitled to summary judgment. Accordingly, we reverse the trial court's grant of summary judgment to National General and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.

create a material factual dispute, we do not address respondents' objections to the competency of certain statements in Ms. Jerzak's affidavits or to the competency of statements in Gerald O'Brien's affidavit.