Deanne PHILLIPS, Plaintiff-Appellant,

v.

U.S. BANK, N.A., Defendant-Respondent.†

Court of Appeals

*No. 2009AP246. Oral argument January 20, 2010.*
*—Decided February 2, 2010.*

2010 WI App 35

(Also reported in 781 N.W.2d 540.)

† Petition for Review granted 6/28/10.

152

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Nicholas M. McLeod* and *Alan C. Olson* of *Alan C. Olson & Associates, S.C.* of New Berlin. There was oral argument by *Alan C. Olson*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Bradley C. Fulton* and *Mindy J. Rowland* of *DeWitt Ross & Stevens S.C.*, Madison. There was oral argument by *Mindy J. Rowland*.

Before Fine, Kessler and Brennan, JJ.

¶ 1. FINE, J. Deanne Phillips appeals the circuit court's final order granting summary judgment to U.S. Bank, N.A., dismissing her claims against U.S. Bank. We reverse because: (1) contrary to the circuit court's ruling, an at-will employee does not forfeit benefits that

153

have accrued during his or her employment even though the agreement governing those benefits conditions their receipt on the employee's continued employment *if* the employer fires the employee solely to prevent the employee from getting the accrued benefits; and (2) there are genuine issues of material fact whether the reasons U.S. Bank gave for firing Phillips were pretextual.

## I.

¶ 2.   Phillips worked for U.S. Bank from January of 1998, in various financial-planning positions, until she was fired in October of 2007. During the latter part of that time, she worked with another U.S. Bank employee, James Janikowski. As a U.S. Bank employee, Phillips participated in a benefit plan that is at issue here. The Plan was governed by two documents:   the 2007 U.S. Bank Line-of-Business Incentive Plan and the Private Asset Management Portfolio Manager Sales Incentive Plan. The Line-of-Business Incentive Plan made employment a condition of eligibility to receive payment:

> In order to encourage employee retention, participants whose employment with the company is terminated, voluntarily or involuntarily for reasons other than position elimination, prior to the date of actual payment are ineligible for an award, except as required by state law or specifically provided in the Performance Measures document.

The Private Asset Management Portfolio Manager Sales Incentive Plan makes being an employee in good standing a condition of eligibility:

> In order to participate in this plan, **there must be no outstanding performance related issues** in the following areas [compliance with regulatory matters not at issue here] and U.S. Bank policies and proce-

dures . . . . In addition, the participant must be in good standing. Good standing includes no violations of law or Company policies, any current disciplinary action and satisfactory job performance.

(Bolding and underlining in original.) U.S. Bank does not dispute that Phillips's benefits under the Plan fully accrued.

¶ 3.   U.S. Bank contends that it fired Phillips because she knew about Janikowski's plans to go with a competitor and not only did not tell the pertinent U.S. Bank supervisors but also lied when asked about it. The fulcrum of U.S. Bank's contention is set out in an affidavit submitted to the circuit court by Dave Isaacson, who oversaw the group in which Phillips worked until she was fired. His affidavit asserts that he had heard about the alleged Phillips/Janikowski matter from other U.S. Bank employees and that he confronted Phillips about it at an October 16, 2007 meeting with her. According to Isaacson's affidavit, "[t]he purpose of that meeting was to provide Phillips with an opportunity to come forward with what she knew about Janikowski's plans to leave the Bank and solicit its clients, as well as to ascertain whether she intended to leave the Bank." His affidavit continues:

> At the meeting, I explicitly asked Phillips whether she had any knowledge of Janikowski's plans to leave the Bank and take Bank clients with him. She responded, "No."
>
> I then asked Phillips whether she herself intended to leave the Bank. She responded, "No."
>
> I did not believe her response to my first question, in light of what I had heard from [a co-employee] the day before. [Phillips's immediate supervisor] did not believe her either.

155

> I had two more conversations over the course of October 19 with Phillips in the same vein. Each time, Phillips denied having any knowledge of Janikowski's plans.

(Paragraph numbers omitted.) Isaacson's affidavit asserts that after the "conversations" he had with Phillips on October 19, he "decided I could no longer trust Phillips. I also decided that she had violated the U.S. Bank Code of Ethics by failing [to] be forthright with me when I gave her several opportunities to do so." Isaacson and others in the bank's chain of command then decided to fire Phillips. U.S. Bank fired her on October 26, 2007.

¶ 4. As we have seen, Phillips claims that the excuse recounted in the Isaacson affidavit was a pretext to fire her so the bank would not have to pay her what had accrued but not yet been paid under the benefit Plan. Insofar as this contention is concerned, the following excerpts from Phillips's deposition about the October 19 meeting are key:

> Q   Did he [Isaacson] ask you whether you knew that Jim [Janikowski] was planning to leave, or something to that effect?
>
> A   No.
>
> Q   Did he ask you whether you had any knowledge of Jim's intention to take clients away from the bank?
>
> A   No.

If Isaacson testified at trial consistent with his affidavit, and Phillips testified at trial consistent with her deposition, a reasonable jury could assess their credibility and find that at least one of them was lying. U.S. Bank admitted as much during oral argument.[1]

---

[1] U.S. Bank contends that Phillips conceded at her deposition that she had improper conversations with Janikowski and, therefore, the firing was justified and not a pretext. Of course,

¶ 5. U.S. Bank contends, however, and the circuit court agreed, that because Phillips was an employee at will and could be fired for any reason or no reason, and because the Plan requires that Plan participants be employed when payment under the Plan is due, Phillips was not entitled to be paid under the Plan because the bank fired her before payment was due. Thus, the circuit court opined:

> Because . . . her termination alone precludes her entitlement to the bonus whether or not there's a factual

the deposition was given after U.S. Bank fired Phillips and thus, perforce, was not considered when the bank fired her. More important, though, is that the concessions are, at least insofar as summary-judgment principles are concerned, fairly innocuous. Thus, on the pages referred to us by U.S. Bank at oral argument, Phillips first learned that Janikowski was considering leaving the bank from a discussion she had with someone other than Janikowski and then it was, according to Phillips, a discussion "about the ramifications if [Janikowski] left. It was not a conversation about — it was not a conversation that he was going to." Then, in a later conversation with Janikowski, he told her that he was unhappy with the way he believed he had been treated and, as a result of that conversation, Phillips had the "impression" that Janikowski was considering leaving U.S. Bank. Phillips also testified at the deposition that although she could not recall "specific conversations" with Janikowski about his seeking other employment, they discussed the matter in the summer or fall of 2007, and that she first learned in the fall of 2007 that Janikowski was seeking employment with a U.S. Bank competitor. This testimony and the testimony in the pages to which U.S. Bank has not cited to us, are not the stuff of summary judgment because they leave much for interpretation and context that can only be fleshed out in a trial. *See Fuller v. Riedel*, 159 Wis. 2d 323, 329, 464 N.W.2d 97, 100 (Ct. App. 1990) ("Summary judgment is appropriate only when material facts are not in dispute and when the only inferences that may reasonably be drawn from those facts are not doubtful and lead to only one conclusion.").

dispute as to whether or not she violated the ethics code [that] is something the Court doesn't have to address at this time even though the parties themselves have set forth responses in the depositions as to whether or not she, more or less, as the defense said, lied or misrepresented to the employer her knowledge of Janikowski's participation and in leaving the bank.

As explained below, on our *de novo* review, we disagree.

## II.

¶ 6. A party is entitled to summary judgment if "there is no genuine issue as to any material fact" and that party "is entitled to a judgment as a matter of law." Wis. Stat. Rule 802.08(2). We review *de novo* a circuit court's ruling on summary judgment, and apply the governing standards "just as the trial court applied those standards." *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). Further, we look at the parties' submissions in a light most favorable to the party against whom summary judgment is sought. *Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, ¶ 30, 283 Wis. 2d 384, 401, 700 N.W.2d 27, 35. Additionally, as noted in footnote 1, "[s]ummary judgment is appropriate only when material facts are not in dispute and when the only inferences that may reasonably be drawn from those facts are not doubtful and lead to only one conclusion." *Fuller v. Riedel*, 159 Wis. 2d 323, 329, 464 N.W.2d 97, 100 (Ct. App. 1990)

¶ 7. The parties agree that an at-will employee like Phillips can be fired for any reason as long as the reason does not implicate a status protected by law. *See*

158

*Repetti v. Sysco Corp.*, 2007 WI App 49, ¶ 8, 300 Wis. 2d 568, 574–575, 730 N.W.2d 189, 192. That does not mean, however, that an at-will employee may be deprived of benefits that accrued before he or she was let go if the firing was to prevent payment of those benefits. Although there is no Wisconsin decision on this precise issue, the law applicable to the principal/agent relationship is directly analogous and applies here. Thus, we have previously recognized the rule as formulated by RESTATEMENT (SECOND) OF AGENCY § 454 (1958):

> An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished as the result of the agents prior efforts.

*Leen v. Butter Co.*, 177 Wis. 2d 150, 153, 501 N.W.2d 847, 848 (Ct. App. 1993) ("[W]hen the agent accomplishes the result for which he or she was retained a principal cannot avoid paying commissions by merely terminating the agency.").[2] Although "[t]his general rule does not apply, however, when the agency agreement specifically limits the recovery of commissions following

---

[2] The parties debate whether the benefits under the Plan were a "commission" or a "bonus." In our view, the argument concerns a distinction that is immaterial here and is an attempt by U.S. Bank to limit *Leen v. Butter Co.*, 177 Wis. 2d 150, 501 N.W.2d 847 (Ct. App. 1993), to "commissions" because that is what was specifically at issue there. The principle recognized by *Leen*, which we have discussed in the main body of this opinion, is applicable to the Plan benefits here irrespective of how they may be characterized—the Plan promised to pay employees money calculated on past performance unless those employees were no longer employed when the payments were due. The Plan payments could, therefore, be characterized with equal

termination," *id.*, 177 Wis. 2d at 154–155, 501 N.W.2d at 848, the termination must not be in bad faith; that is, it must not be done in order to avoid paying what would otherwise be due, *id.*, 177 Wis. 2d at 153–154, 501 N.W.2d at 848. *See also Compton v. Shopko Stores, Inc.*, 93 Wis. 2d 613, 625, 287 N.W.2d 720, 726 (1980) ("Executive Bonus Plan" was "a binding unilateral contract when the employee fulfilled the duties called for by the plan); *Fortune v. National Cash Register Co.*, 364 N.E.2d 1251, 1255–1256 (Mass. 1977) (An at-will employment agreement is subject to the requirement that the parties act in good faith when termination of employment cuts off an employee's entitlement to a "bonus commission.").

■■

¶ 8.    While it is true, as U.S. Bank argues, that in the at-will-employee context there is no "duty to *terminate* in good faith," *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 564, 569, 335 N.W.2d 834, 836, 838 (1983) (at-will employee) (emphasis added), the requirement that parties act in "good faith" inheres in every contract and, therefore, an employer must comply in good faith with its "contractual obligations," *Hale v. Stoughton Hosp. Ass'n, Inc.*, 126 Wis. 2d 267, 274, 376 N.W.2d 89, 93 (Ct. App. 1985) (*"Brockmeyer* does not relieve an employer of contractual obligations it has undertaken."). Here, U.S. Bank contracted to pay employees benefits under the Plan so long as the employees fulfilled the Plan's prerequisites and were employed when payment of those benefits were due. As we have seen, U.S. Bank does not contest that Phillips fulfilled

accuracy as a "bonus" for a job well done, or as a "commission" for work well fulfilled. Here at least, this is a difference between twilight and dusk.

the Plan requirements. Under *Leen*, U.S. Bank cannot avoid paying Phillips benefits that accrued under the Plan if it fired her in order to not pay her. *See also Compton*, 93 Wis. 2d at 625, 287 N.W.2d at 726; *Fortune*, 364 N.E.2d at 1255–1256. Since, as we have seen, there is a genuine issue of material fact whether the excuse recounted in Isaacson's affidavit was a pretext, we reverse the circuit court's order granting summary judgment.[3]

*By the Court.*—Order reversed.

---

[3] The parties discuss many other matters, including whether Phillips violated the bank's code of ethics. Those matters are, however, incapable of resolution on summary judgment because the evidence in the Record does not lead to only one conclusion, *see Fuller*, 159 Wis. 2d at 329, 464 N.W.2d at 100, and we need a full exposition of the facts at a trial for a reasoned analysis, *see Burbank Grease Services, LLC v. Sokolowski*, 2006 WI 103, ¶ 49, 294 Wis. 2d 274, 307, 717 N.W.2d 781, 798. Insofar as U.S. Bank's contention that the Plan imposed only a discretionary duty on it is concerned, the bank has conceded that Phillips fulfilled all her obligations under the Plan. Thus, the bank could not exercise whatever discretion it reserved in the Plan to revoke benefits that had already accrued. *See Compton v. Shopko Stores, Inc.*, 93 Wis. 2d 613, 625, 287 N.W.2d 720, 726 (1980) ("Executive Bonus Plan" was "a binding unilateral contract" when the employee fulfilled the duties called-for by the plan); *see also Leen v. Butter Co.*, 177 Wis. 2d 150, 153154, 501 N.W.2d 847, 848 (Ct . App. 1993) (may not terminate agency in bad faith merely to avoid paying what is owed).